William Nelson  HON. JUDGE DAVID G. ESTUDILLO
1523 132ND ST SE STE. C418
Everett, Washington 98208
425-645-9222 | 808-204-1401
william@seattleseahawks.me

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT (TACOMA DIVISION)

| | |
|---|---|
| WILLIAM NELSON,<br><br>             Plaintiff,<br><br>vs.<br><br>WASHINGTON BOARD OF INDUSTRIAL INSURANCE APPEALS; TIMOTHY M. BLOOD, IN HIS OFFICIAL CAPACITIY AND JANICE ROSEN IN HER OFFICIAL CAPACITY.<br><br>             Defendants. | Case No.: 3:25-cv-05551-DGE<br><br>MOTION TO AFFIRM PLAINTIFF'S RIGHT TO USE COMPUTER SOFTWARE PROGRAMS—INCLUDING "AI"—TO LITIGATE HIS CASE<br><br>NOTED FOR CONSIDERATION: SAME DAY (LCR 7(D)(1)) |

## I. INTRODUCTION

**Request for Same-Day Ruling. Because the Court's decision directly affects Mr. Nelson's ability to finalize an impending emergency TRO reconsideration and other time-sensitive filings, he respectfully asks for same-day consideration under the Court's inherent authority (cf.** *Landis v. North American Co.***, 299 U.S. 248, 255 (1936)) and any applicable local rule governing expedited motions.**

William J. Nelson asks the Court for a straightforward ruling: **a pro se litigant may use computer software—often called "artificial intelligence" (AI)—to help research the law, organize evidence, and draft court papers.** AI is simply code. It is not a human, has no legal license, and therefore cannot violate unauthorized-practice rules aimed at people. No federal statute, rule, or case bars a party from using computer software, and Congress has not passed any law saying otherwise. Mr. Nelson therefore seeks an order confirming he may continue using his home-built program, **Athena AI**, while staying responsible for everything he files under Federal Rule 11.

MOTION TO AFFIRM PLAINTIFF'S RIGHT TO USE COMPUTER SOFTWARE PROGRAMS—INCLUDING "AI"—TO LITIGATE HIS CASENOTED FOR CONSIDERATION: SAME DAY (LCR 7(D)(1)) - 1

## II.     KEY FACTS

- **Health needs.** Long-COVID has left Mr. Nelson with memory and focus problems.
- **What Athena AI does.** Athena AI is a cluster of micro-services governed by an orchestration layer that runs task pipelines, playbooks, and other instruction sets. In the context of assisting William with his case, these coordinated programs collect documents, search case law, format citations, and generate draft motions or perform other tasks always at Mr. Nelson's direction. He signs final drafts.

## III.     LEGAL SUPPORT

1. **Separation of powers.** Courts interpret laws; they do not create new rules about what software a litigant may use. *Marbury v. Madison*, 5 U.S. 137 (1803).
2. **28 U.S.C. § 1654.** Any party may handle a case on their own. The statute does not limit research tools.
3. **Due Process & Equal Protection.** People must have a fair chance to present their cases. *Bounds v. Smith*, 430 U.S. 817 (1977).
4. **Unauthorized-Practice (UPL).** UPL laws cover people, not software. See ABA Formal Opinion 498 (2021).
5. **ADA & Judicial Conference.** Title II of the ADA (42 U.S.C. § 12132) requires public entities—including federal courts—to provide "**auxiliary aids and services,**" broadly defined in 28 C.F.R. § 35.104 to include *"accessible electronic and information technology"* and *"other effective methods of making materials available."* Section 35.160(b)(2) further mandates that the court give **primary consideration** to the aid chosen by the disabled person, while § 35.164 allows denial only after a written, senior-level finding of <u>undue burden</u> and only if an equally effective alternative is offered. The ADA Amendments Act of 2008 and DOJ Technical Assistance Guidance confirm that emerging or modified technologies—whether purchased off-the-shelf, custom-built, or user-adapted—qualify as auxiliary aids. The Judicial Conference's 1995 policy adopts these standards for the entire federal judiciary, compelling acceptance of assistive technology devices like Athena AI unless the court documents a specific, substantiated burden.
6. **Pro Se Error Tolerance.** Federal courts construe pro se filings liberally and allow corrections for honest mistakes. *Erickson v. Pardus*, 551 U.S. 89 (2007). Many self-represented litigants lack costly, subscription-only databases such as Westlaw, LexisNexis, V-Lex, or Casemine and must rely on free web

MOTION TO AFFIRM PLAINTIFF'S RIGHT TO USE COMPUTER SOFTWARE PROGRAMS—INCLUDING "AI"—TO LITIGATE HIS CASENOTED FOR CONSIDERATION: SAME DAY (LCR 7(D)(1)) - 2

resources. The Court should not penalize a pro se party for citation or formatting errors that stem from unequal access to proprietary tools especially when these tools are free to law students or members of the bar, yet pro se litigants are outright denied. Amendment, withdrawal, or substitution—not sanctions—remains the proper remedy.

7. **Interface Autonomy.** No statute or rule empowers a court to dictate *how* a litigant interacts with software. Whether a user types on a keyboard, clicks a mouse, speaks via voice recognition, sign-language via a webcam, or employs a brain computer interface (BCI), the choice of input method is a personal choice, not subject to judicial control.

8. **Personal Bias Is Not a Legal Basis.** Judges, attorneys, litigants, or court staff may personally distrust, dislike or even have a prejudice or bias towards certain Computer Software Programs, but those subjective views cannot override statutory and constitutional guarantees. The First Amendment permits individuals to hold opinions, yet due process, equal protection, and § 1654 forbid the judiciary from denying a litigant's right to use lawful technology to litigate their case.

9. **System-Wide Consequences of a Bench-Made Ban.** If a single court were to prohibit Computer Software AI for research, analysis, drafting, or any other litigation use—without Congressional authorization—it would effectively legislate from the bench. Such a rule would cast doubt on thousands of past and future cases nationwide where parties, counsel, or even the courts themselves have relied on similar or competing software. The resulting need to revisit judgments under Fed. R. Civ. P. 60(b)(4) would impose a massive systemic burden and undermine public confidence in the judiciary.

10. **Advisory Note on National Impact.** The Court acknowledges that a judicial ban on Computer Software AI would necessarily implicate countless cases nationwide. Any regulation with such sweeping effect belongs to Congress, and a court-specific prohibition risks undermining equal protection and burdening the federal judiciary with widespread collateral challenges.

\\
\\
\\
\\

MOTION TO AFFIRM PLAINTIFF'S RIGHT TO USE COMPUTER SOFTWARE PROGRAMS—INCLUDING "AI"—TO LITIGATE HIS CASENOTED FOR CONSIDERATION: SAME DAY (LCR 7(D)(1)) - 3

IV.     REQUESTED ORDER

Consistent with the "straightforward ruling" requested in § I, Mr. Nelson asks the Court to enter an order stating:

1. **Affirmed Right to Use Software.** A pro se litigant has a constitutional and statutory right to deploy lawful Computer Software Programs to litigate their case - including AI for research, analysis, and drafting. The Court lacks authority to prohibit or limit that choice absent an Act of Congress.

2. **No Rejection Based on Software.** The mere fact that a filing was produced with software assistance shall not serve as grounds to refuse, strike, or prejudice the document.

3. **Rule 11 Accountability.** Plaintiff remains fully responsible for verifying facts, law, and citations in every filing he signs.

4. **Interface Autonomy.** The Court will not regulate *how* Mr. Nelson interacts with his software (e.g., keyboard, voice, sign language, or brain–computer interface) unless a specific method demonstrably disrupts proceedings.

V.     REFERENCES

| Authority | Relevance | Authority | Relevance |
|---|---|---|---|
| *Marbury v. Madison* (1803) | Confirms courts may interpret but not create new tech-specific restrictions, supporting the claim that only Congress could bar software use. | 28 U.S.C. § 1654 | Guarantees a party's right to conduct a case personally, implying freedom to choose software research tools. |
| *Bounds v. Smith* (1977) | Establishes that meaningful court access includes adequate resources, bolstering the need for assistive software. | ABA Formal Opinion 498 (2021) | States that software cannot "practice law," defeating any UPL objection to Athena AI. |
| *Erickson v. Pardus* (2007) | Directs courts to read pro se filings liberally and allow corrections, reinforcing forgiveness for software-based citation errors. | ADA Title II — 42 U.S.C. § 12132 | Requires courts to accommodate assistive tech for disabled persons unless undue burden exists. |
| Judicial Conference ADA Policy (1995) | Implements ADA Title II across the judiciary, mandating acceptance of assistive technology. | | |

\\

\\

MOTION TO AFFIRM PLAINTIFF'S RIGHT TO USE COMPUTER SOFTWARE PROGRAMS—INCLUDING "AI"—TO LITIGATE HIS CASENOTED FOR CONSIDERATION: SAME DAY (LCR 7(D)(1)) - 4

1  Respectfully submitted this 24 day of June 2025.

2

3  _____

4  **William Nelson, Pro Se**
   1523 132ND ST SE. STE C418
5  Everett, Wa 98208
   (425) 645-9222 (desk)
6  (425) 800-8800 (mobile)
   (808) 204-1401 (fax)
7  william@seattleseahawks.me (email)

MOTION TO AFFIRM PLAINTIFF'S RIGHT TO USE COMPUTER SOFTWARE PROGRAMS—INCLUDING "AI"—TO LITIGATE HIS CASENOTED FOR CONSIDERATION: SAME DAY (LCR 7(D)(1)) - 5