William Nelson
1523 132ND ST SE STE. C418
Everett, Washington 98208
425-645-9222 | 808-204-1401
william@seattleseahawks.me



HON. JUDGE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT (TACOMA DIVISION)

| | |
|---|---|
| WILLIAM NELSON,<br><br>**Plaintiff,**<br><br>vs.<br><br>**WASHINGTON BOARD OF INDUSTRIAL INSURANCE APPEALS ET AL.**<br><br>**Defendants.** | Case No.: 3:25-cv-05551-DGE<br><br>**PLAINTIFF'S MOTION IN RESPONSE TO ORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESS**<br><br>**NOTE ON MOTION CALENDAR:** |

Plaintiff William Nelson respectfully submits this Motion in response to the Court's November 13, 2025, Order to Show Cause (Dkt. 41) and moves the Court for reasonable accommodations and alternative procedures regarding service of process and case management.

Mr. Nelson appears pro se and is a person with a severe Long COVID–induced cognitive disability. As explained below and supported by medical evidence and the existing record, Mr. Nelson's failure to provide the U.S. Marshals Service with service addresses by the deadline was not willful or dilatory, but the direct result of (1) his profound cognitive and neurological impairments and (2) procedural barriers imposed by prior Court orders that foreclosed the only methods he could use to comply.

Mr. Nelson respectfully requests that the Court: (1) find that good cause exists for his failure to provide service information; (2) decline to dismiss this action for failure to prosecute; and (3) enter reasonable accommodations and alternative service procedures that will permit this case to proceed consistent with federal disability law and due process.

PLAINTIFF'S MOTION IN RESPONSE TOORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESSNOTE ON MOTION CALENDAR: - 1

## I. RELIEF REQUESTED

Plaintiff respectfully moves the Court for an order that:

1. **Finds good cause** under Federal Rule of Civil Procedure 4(m) and 41(b) for Plaintiff's failure to provide service addresses by the Court's deadline, in light of his disability and the procedural barriers described below;

2. **Declines to dismiss** this case for failure to prosecute or for insufficient service of process;

3. **Authorizes an accessible, lawful method for providing service addresses** to the U.S. Marshals, such as:
   - permitting Plaintiff to submit the addresses **under seal** or **in camera**, and/or
   - directing the Clerk or the Marshals Service to use address information already contained in prior filings and materials in the Court's possession;

4. **Provides reasonable accommodations for future proceedings**, including but not limited to:
   - allowing Plaintiff or his assistive technology ("Athena AI") to communicate with the Clerk's Office and/or Marshals Service by email or other simplified electronic means to transmit service information and documents; and
   - modifying prior orders that barred informal accommodation communications, so that the ADA Coordinator and Clerk may meaningfully participate in an interactive process as contemplated by federal disability law and Judicial Conference policy;

5. **Reconsiders and grants appointment of counsel and/or a guardian ad litem** under Fed. R. Civ. P. 17(c)(2), 28 U.S.C. § 1915(e)(1), and the Court's inherent authority, at least for the limited purpose of assisting with service of process, case management, and accommodation requests; and

6. Grants such other and further relief as the Court deems just and proper to ensure Plaintiff's meaningful access to the Court.

## II. INTRODUCTION

Mr. Nelson respectfully shows cause why he has been unable to provide the U.S. Marshals Service with service addresses as previously directed. In short, Mr. Nelson's **severe Long COVID–induced cognitive disability—**

compounded by **procedural restrictions contained in the Court's own orders**—has made compliance medically and practically impossible.

Mr. Nelson is willing and eager to cooperate with the service process. However, his neurological impairments prevent him from managing litigation tasks without assistance, and the Court's orders have barred the only channels (email, simplified filing, or informal ADA coordination) through which he could safely transmit the necessary information.

Dismissal for want of prosecution, under these circumstances, would punish a severely disabled litigant for circumstances beyond his control and would conflict with **§ 504 of the Rehabilitation Act, Judicial Conference disability-access policy,** and **due process guarantees** requiring "meaningful access" to the courts for persons with disabilities.

## III. FACTUAL BACKGROUND

**A. Mr. Nelson's Long COVID Disability**

Mr. Nelson suffers from **severe neurological and cognitive impairments due to Long COVID,** as documented by his treating physicians, including **Dr. Jessica Bender, MD, MPH,** Co-Medical Director of the UW Post-COVID Clinic.

Dr. Bender has opined in writing that Mr. Nelson has:

- "profound deficits in memory, executive function, and stamina," and
- "significant short-term memory loss, impaired concentration, [and] frequent episodes of confusion."

Mr. Nelson often cannot retain new information for more than moments and becomes disoriented under minimal stress. Dr. Bender further reports that Mr. Nelson **collapsed during a court hearing on February 8, 2025,** becoming non-responsive from cognitive overload and requiring emergency medical care. He is now essentially homebound, dependent on his wife for basic daily needs, and, in Dr. Bender's expert opinion, **"completely incapable of managing the demands of litigation on his own."** See Dr. Bender ADA Accommodation Request Letter to the Western District of Washington Drafted September 5th 2025 attached to the **MOTION MEMORANDUM OF POINTS AND AUTHORITIES** which the plaintiff has been barred by this court to provide to the ADA coordinator or file a motion with the court until opposing party is served.

PLAINTIFF'S MOTION IN RESPONSE TOORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESSNOTE ON MOTION CALENDAR: - 3

Dr. Bender also explains that forcing Mr. Nelson to engage with unmodified court procedures **exacerbates his condition**. Each attempt to comply with complex legal tasks can trigger dangerous "crashes"—episodes of extremely low blood pressure, tachycardia, blackouts, and cognitive shutdown—directly caused by the stress and cognitive load of unaccommodated litigation.

According to Dr. Bender, every day Mr. Nelson is required to act as his own attorney "places him in harm's way" and has "directly caused a decline in his health." Dr. Bender concludes that it is **medically impossible** for Mr. Nelson to comply with typical litigation demands without substantial assistance, and that the **appointment of counsel** (or similar support) is "medically necessary to protect [his] health, and legally necessary to ensure his access to due process."

Thus, Mr. Nelson is **not refusing** to prosecute his case. He is **unable to do so by reason of his disability**, unless the Court provides reasonable accommodations and assistance.

**B. Procedural Barriers Imposed by the Court**

Despite awareness of Mr. Nelson's disability and medical documentation, several Court orders have, in practice, **erected additional barriers** that blocked him from effecting service via the U.S. Marshals.

    1. **No Review of Filings Until After Service ("Catch-22")**

In a July 22, 2025 order, the Court stated that it **would not review filings from Plaintiff** until after Defendants were served. By August 12, 2025, the Court observed that Plaintiff still had not provided the necessary service information, but because of this blanket rule, **Mr. Nelson's pleas for accommodation and assistance went unheard**. Opposing party is not required nor a participant in these motions and certificate of service is also not required.

This created an impossible circular trap: the Court would not consider accommodation requests or motions until after service, but Mr. Nelson needed accommodation precisely **in order to accomplish service**. As a result, he was effectively told that no assistance would be considered until he completed on his own the task that he physically and cognitively could not complete.

    2. **Accommodation Requests Restricted to Formal Motions Only**

In its June 26, 2025 order (Dkt. 19), the Court **prohibited Mr. Nelson from communicating with the Court's ADA Coordinator or Clerk's Office** about accommodations, instead directing that "any additional accommodation

PLAINTIFF'S MOTION IN RESPONSE TO ORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESS NOTE ON MOTION CALENDAR: - 4

requests… SHALL be filed on the Court's docket as a formal motion." The Clerk was ordered not to respond to **any** informal accommodation requests.

Consequently, Mr. Nelson was barred from communicating with the Western District's designated ADA contact (Mr. Patrick Sherwood) about potential solutions. In an email response, Mr. Sherwood stated that the Clerk's Office **"will take no action in response to your email"** and referred Mr. Nelson back to the order requiring formal motions. The very person responsible for coordinating accommodations was thus effectively unavailable to Mr. Nelson, whose disability makes preparing formal motions extraordinarily difficult and medically risky.

   3. **Prohibition on Email Filing / API Access for Assistive Technology**

The Court also **denied Mr. Nelson permission to file documents by email or other simplified means**, requiring instead that he use the standard CM/ECF system or physical mail.

Mr. Nelson had requested a reasonable modification: allowing his assistive device, "Athena AI," to assist with filings electronically. The June 26 order explicitly **denied "filing through means other than CM/ECF,"** finding no further accommodation warranted. When Mr. Nelson (through Athena) requested, as an alternative, **limited API access** for his assistive software to interface with CM/ECF, ADA Coordinator Sherwood refused, stating that access to the court database "cannot be granted to an external party under any circumstance," without any individualized analysis or discussion of alternatives when actually the courts own website provides API access essentially signaling out Mr. Nelson and barring his access even further..

The **Judicial Conference's disability-access policy**, however, requires federal courts to provide "appropriate auxiliary aids and services" and to give **primary consideration** to the accommodation requested by the person with a disability unless it would impose an undue burden or fundamentally alter the program. Here, Mr. Nelson's proposed solutions (email filing or API access for his assistive technology) were **rejected categorically**, and no effective alternative was offered.

   4. **Inability to Provide Service Addresses – Privacy "Catch-22"**

Despite these constraints, Mr. Nelson **diligently attempted to comply** with the Court's service requirements. By July 3, 2025 he had **located physical service addresses for each intended Defendant**, including the BIIA, individual state officials (such as Timothy Blood and Janice Rosen), and relevant federal actors (Judge Estudillo, Clerk Ravi Subramanian, ADA Coordinator Sherwood, etc.).

PLAINTIFF'S MOTION IN RESPONSE TOORDER TO SHOW CAUSE AND FOR REASONABLE
ACCOMMODATIONS REGARDING SERVICE OF PROCESSNOTE ON MOTION CALENDAR: - 5

A serious legal problem arose: many of these addresses are **personal home addresses** of judges and court officials. The **Daniel Anderl Judicial Security and Privacy Act of 2022** protects such personal information from public disclosure. Mr. Nelson reasonably believed that filing these home addresses on the public docket could violate that statute and place individuals at risk.

The straightforward solution would have been to provide these addresses **under seal, in camera**, or directly to the U.S. Marshals Service off-docket—methods explicitly contemplated by the Judicial Security Act and common practice in federal courts.

However, when Mr. Nelson, through Athena, requested permission from ADA Coordinator Sherwood to transmit the address list privately (for example, by email directly to the Marshals or via a sealed submission), Sherwood's response was essentially: **"File a motion."** Because the Court had forbidden informal accommodation communications and had previously refused alternative filing methods, Mr. Nelson was unable to utilize any of the safe channels that would have allowed him to transmit the address list.

This left Mr. Nelson in an insoluble bind:

- If he kept the addresses private, the Marshals could not act;
- If he disclosed them publicly, he risked violating federal judicial-security law.

Only the Court could resolve this "legal catch-22," but the Court and its designees declined to accept the information off-docket, declined to permit email submission, and declined to provide any alternative means that Mr. Nelson could physically manage.

### C. Mr. Nelson's Efforts and Current Posture

Mr. Nelson has **consistently acted in good faith**:

- He **assembled the required service information** in early July 2025;
- He **informed the Court** through motions and letters in June and July of the privacy dilemma, his disability-related limitations, and the ADA Coordinator's refusal to facilitate an accommodation; and
- He specifically requested that the Court either **accept the addresses under seal, or direct the Marshals to use address information already in the record and given these are government officials easily available to this court.**

PLAINTIFF'S MOTION IN RESPONSE TOORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESSNOTE ON MOTION CALENDAR: - 6

Because the Court's prior orders precluded informal communications and the Court had indicated it would not review filings until after service, Mr. Nelson's requests were effectively left unaddressed. As of the date of the Order to Show Cause, the docket **still lacks proof of service**, not because Mr. Nelson was unwilling to comply, but because he was **physically and procedurally unable** to complete the final step without reasonable accommodations.

## IV. LEGAL FRAMEWORK

### A. Federal Disability-Access Requirements

While the Court has observed that **Title II of the ADA** does not formally bind the federal judiciary, **federal law still guarantees disabled litigants equal access to justice.**

    1. **Rehabilitation Act and Judicial Conference Policy**

Section 504 of the **Rehabilitation Act of 1973**, 29 U.S.C. § 794, provides that programs or activities receiving federal financial assistance may not exclude or deny benefits to a qualified individual with a disability. The federal judiciary, through the Administrative Office of the U.S. Courts, operates under this framework.

In response, the **Judicial Conference of the United States** has established policy (in place since at least 1995 and revised in 2009) requiring federal courts to provide **"appropriate auxiliary aids <u>and services</u>"** to participants with disabilities and to give **primary consideration** to the accommodation requested by the individual, unless providing it would impose an undue financial or administrative burden or fundamentally alter the nature of the service.

Reasonable modifications may include:

- accepting filings in alternative formats,
- adjusting deadlines,
- facilitating communication with court personnel, and
- providing support personnel or other aids necessary for meaningful participation.

Here, Mr. Nelson's requested accommodations were straightforward and narrowly tailored:

(1) permission to use simplified electronic means (e.g., email or assistive-technology API) to transmit documents and service information; and/or

(2) appointment of counsel or a helper to assist with litigation tasks.

PLAINTIFF'S MOTION IN RESPONSE TO ORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESS NOTE ON MOTION CALENDAR: - 7

None of these requests were granted, and **no workable alternative** was provided. There is no finding in the record that such accommodations would impose an undue burden or fundamentally alter the proceedings. The refusal to meaningfully engage with these requests is inconsistent with § 504, with Judicial Conference policy, and with the **interactive process** requirement reflected in regulations such as 28 C.F.R. § 35.164 and similar guidance.

The Ninth Circuit has held in **Duvall v. County of Kitsap**, 260 F.3d 1124 (9th Cir. 2001), that when an individual specifically requests an accommodation, the public entity must undertake a fact-specific investigation and either grant the request or offer an effective alternative. Simply ignoring the request or responding with rigid, categorical prohibitions can amount to **deliberate indifference** to the individual's rights. See id. at 1139–40.

Similarly, in **Updike v. Multnomah County**, 870 F.3d 939 (9th Cir. 2017), the court criticized blanket refusals and stressed the need for individualized analysis and consideration of alternatives.

In Mr. Nelson's case, the ADA Coordinator's written response gave no individualized rationale and stated only that access "cannot be granted under any circumstance," while the Court's orders barred informal accommodation dialogue altogether. This is the opposite of the flexible, interactive process contemplated by disability law.

    2. **Constitutional Right of Access to Courts**

Separately, the **constitutional right of access to the courts** requires that persons with disabilities be afforded a meaningful opportunity to be heard. In **Tennessee v. Lane**, 541 U.S. 509 (2004), the Supreme Court recognized that Title II of the ADA, as applied to access to courts, enforces the guarantees of **due process and equal protection** by ensuring basic courthouse accessibility.

Even if certain ADA provisions do not formally apply to federal courts, the underlying principle does: **excluding a litigant by reason of disability—whether through physical barriers or procedural obstacles—is constitutionally impermissible.** See id. at 531–34.

Without accommodations:

- Mr. Nelson cannot prepare or file documents without triggering dangerous medical "crashes";
- He cannot effectively meet deadlines or navigate CM/ECF procedures; and
- He now faces potential dismissal solely because his disability prevented strict procedural compliance.

This scenario is akin to a default judgment imposed not after an adjudication on the merits, but as a direct consequence of Mr. Nelson's recognized medical incapacity. That raises serious **due process concerns**.

PLAINTIFF'S MOTION IN RESPONSE TOORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESSNOTE ON MOTION CALENDAR: - 8

**B. Rule 17(c) and Prior State-Court Determination of Incapacity**

Mr. Nelson's incapacity is not merely self-reported. In prior related state litigation, a Washington State Superior Court judge has already **determined that Mr. Nelson is legally incapacitated** and appointed a **guardian ad litem** for him due to his cognitive impairment. That adjudication, uncontradicted by any evidence, implicates **Federal Rule of Civil Procedure 17**.

Under Rule 17(b), capacity to sue or be sued is determined by the law of the person's domicile. Mr. Nelson's domicile is Washington, where a court has found him incapacitated. Under Rule 17(c)(2), the Court must protect an incompetent person who is unrepresented in an action by, for example, appointing a guardian ad litem or issuing another appropriate order.

The **Full Faith and Credit Act**, 28 U.S.C. § 1738, requires federal courts to respect state-court determinations of legal status. Yet, in its June 26 order, this Court declined to appoint a guardian ad litem, stating that there was "no basis" to find Mr. Nelson incompetent on the record. Respectfully, the existing state-court finding provides precisely such a basis, or at least a strong reason to inquire further before requiring him to proceed entirely pro se.

The Ninth Circuit has recognized that a district court has an affirmative **duty to protect an incompetent litigant** under Rule 17(c). Failure to do so can be reversible error. See, e.g., **Davis v. Walker**, 745 F.3d 1303, 1310 (9th Cir. 2014).

In effect, Mr. Nelson is simultaneously:

- deemed incapacitated in state court, with a guardian ad litem; and
- required to litigate pro se in federal court, without comparable protections.

This inconsistency undermines the uniform administration of justice and is directly relevant to whether Mr. Nelson's inability to complete service should be excused and whether protective measures (such as appointed counsel or a federal guardian ad litem) are now required.

## V. ARGUMENT

**A. Good Cause Exists for Failure to Provide Service Addresses**

PLAINTIFF'S MOTION IN RESPONSE TOORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESSNOTE ON MOTION CALENDAR: - 9

Federal Rule of Civil Procedure 4(m) requires dismissal for failure to timely serve defendants **unless the plaintiff shows good cause** for the failure, in which case the court must extend the time for service. Courts also retain discretion to grant extensions even absent strict good cause, particularly where dismissal would be unjust.

Here, Mr. Nelson has shown **more than good cause**:

1. **Severe Cognitive Disability**

   His Long COVID–related impairments, documented by his treating physician and previously recognized in the record, make it medically impossible for him to manage complex litigation tasks, including preparing and filing service information, without assistance.

2. **Court-Imposed Procedural Restrictions**

   The Court's orders:
   - barred informal accommodation communications with the ADA Coordinator or Clerk;
   - refused email or simplified filing; and
   - indicated that filings would not be reviewed until after service.

These restrictions **directly prevented** the very accommodations Mr. Nelson needed to complete service, and left him without any safe method to transmit private service information to the Marshals.

3. **Judicial Security Privacy Obligations**

   The Judicial Security Act prohibits public disclosure of the personal home addresses of judges and certain court personnel. Mr. Nelson reasonably believed he could not lawfully place those addresses on the public docket. Because the Court and its designees refused to accept the addresses under seal, in camera, or via private email, Mr. Nelson was stuck in a legal "catch-22."

4. **Diligent, Good-Faith Efforts**

   Mr. Nelson actually **located service addresses for all intended Defendants**, notified the Court of his progress and of the privacy dilemma, and requested practical solutions such as sealed submissions or use of addresses already in the record. None of these requests were acted upon in time.

Under these circumstances, the delay in providing addresses is not neglect or disobedience; it is the **direct result of disability and inaccessible procedures**. That is good cause as a matter of law and equity.

**B. The Court Must Use Less Drastic Alternatives than Dismissal**

PLAINTIFF'S MOTION IN RESPONSE TO ORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESS NOTE ON MOTION CALENDAR: - 10

Before dismissing for failure to prosecute, courts must consider **less drastic alternatives**, especially when the litigant is disabled and the failure stems from barriers beyond the litigant's control.

Here, numerous less drastic alternatives are available, including:

- extending the time for service;
- directing the Clerk or Marshals to use address information already in the Court's possession;
- permitting Mr. Nelson to submit updated address information **under seal** or **in camera**;
- allowing limited email or simplified electronic communications for service-related matters; and
- appointing counsel or a guardian ad litem for the limited purpose of effecting service and managing accommodation requests.

None of these alternatives would prejudice Defendants, who have not yet appeared, and all would greatly reduce the risk of severe prejudice to Mr. Nelson, whose claims would otherwise be extinguished without any merits determination.

**C. Reasonable Accommodations Are Required to Ensure Meaningful Access**

Given Mr. Nelson's documented medical condition, prior state-court findings of incapacity, and the Rehabilitation Act/Judicial Conference framework, Mr. Nelson is entitled to **reasonable accommodations** that give him a meaningful opportunity to participate in this litigation.

At minimum, these accommodations should include:

1. A mechanism for **secure, non-public transmission of service addresses** to the U.S. Marshals (e.g., sealed submission, in camera review, or direct communication with the Marshals via email or other accessible means);
2. Modification of prior orders that barred informal communication with the ADA Coordinator and Clerk's Office, so that a genuine **interactive process** can occur to identify effective accommodations; and
3. **Appointment of counsel and/or a guardian ad litem** to assist with service, scheduling, and filings, consistent with Rule 17(c)(2), § 1915(e)(1), and the Court's inherent authority.

Dr. Bender expressly compares the need for counsel in Mr. Nelson's case to the need for an interpreter for a deaf litigant. For Mr. Nelson, counsel is both **medically necessary (to avoid dangerous cognitive crashes)** and **legally necessary** to ensure that he can actually access the Court's processes.

PLAINTIFF'S MOTION IN RESPONSE TOORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESSNOTE ON MOTION CALENDAR: - 11

Granting these accommodations would align this Court with the Rehabilitation Act, Judicial Conference policy, and constitutional principles of due process and equal access.

## VI. CONCLUSION

For all the reasons explained above, Plaintiff respectfully submits that **good cause exists** for his failure to provide the service addresses by the original deadline. Mr. Nelson has been, and remains, **ready and willing to supply that information**—and has already assembled it—**if the Court provides an accessible, lawful means to do so.**

The failure to effect service to date is a direct result of:

- Mr. Nelson's severe Long COVID–related cognitive disability; and
- the lack of reasonable accommodations and flexible procedures to account for that disability.

It is not the product of neglect, disinterest, or willful disobedience.

Mr. Nelson therefore respectfully requests that the Court:

1. Find that he has shown good cause for his failure to provide service addresses and decline to dismiss this case under Rules 4(m) or 41(b);
2. Extend the time for service and enter an order authorizing an **accessible, lawful method** of providing service addresses to the U.S. Marshals, including but not limited to a one-time **sealed filing, in camera submission,** or other secure mechanism that protects judicial-security interests;
3. Modify prior orders to permit **meaningful communication with the ADA Coordinator and Clerk's Office** and allow reasonable alternative filing/communication methods appropriate to Mr. Nelson's disability; and
4. Reconsider and grant **appointment of counsel and/or a guardian ad litem**, at least for the limited purpose of assisting with service of process and case management, consistent with Rule 17(c)(2) and 28 U.S.C. § 1915(e)(1).

Such relief would fulfill this Court's obligations under the Rehabilitation Act, Judicial Conference directives, and the Constitution to ensure **equal access to justice,** and would prevent the profoundly unfair result of terminating a potentially meritorious case solely due to the effects of a documented disability.

PLAINTIFF'S MOTION IN RESPONSE TOORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESSNOTE ON MOTION CALENDAR: - 12

Respectfully submitted this 28 November 2025.

[signature]

**William Nelson, Pro Se**
1523 132ND ST SE. STE C418
Everett, Wa 98208
(425) 645-9222 (desk)
(425) 800-8800 (mobile)
(808) 204-1401 (fax)
william@seattleseahawks.me (email)

PLAINTIFF'S MOTION IN RESPONSE TOORDER TO SHOW CAUSE AND FOR REASONABLE ACCOMMODATIONS REGARDING SERVICE OF PROCESSNOTE ON MOTION CALENDAR: - 13

PRESS FIRMLY TO SEAL   PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED



**Click-N-Ship®**

9470 1301 0935 5012 3584 68 0289 5001 0009 6402

usps.com
$28.95
US POSTAGE

1 lb 0.0 oz

**PRIORITY MAIL EXPRESS®**

Created 2025-11-26
Flat Rate Envelope
RDC 07    C007

FILED
DEC 02 2025
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

WILLIAM J NELSON
1523 132ND ST SE STE C418
EVERETT WA 98208-7200

WAIVER OF SIGNATURE

DISTRICT COURT WESTERN DISTRICT OF WA
RM 3100
1717 PACIFIC AVE
TACOMA WA 98402-3234

USPS TRACKING #

9470 1301 0935 5012 3584 68


USPS.COM/PICKUP

PS00001000014    EP14F July 2022
OD: 12 1/2 x 9 1/2