FILED ____ LODGED
____ RECEIVED

DEC 02 2025

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ____ DEPUTY

William Nelson
1523 132ND ST SE STE. C418
Everett, Washington 98208
425-645-9222 | 808-204-1401
william@seattleseahawks.me

**HON. JUDGE DAVID G. ESTUDILLO**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT (TACOMA DIVISION)

| | |
|---|---|
| **WILLIAM NELSON,** | Case No.: 3:25-cv-05551-DGE |
| **Plaintiff,** | |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| **WASHINGTON BOARD OF INDUSTRIAL INSURANCE APPEALS ET AL.** | **NOTE ON MOTION CALENDAR: \|Set per LCR 7(d)\|** |
| | **REQUEST FOR HEARING: Plaintiff respectfully requests oral argument and a status hearing.** |
| **Defendants.** | |

### I. INTRODUCTION AND RELIEF REQUESTED

Plaintiff **William Nelson** responds to the Court's **Order to Show Cause** (Dkt. 41, Nov. 13, 2025) and moves the Court to **decline dismissal** and instead:

1. **Find good cause** for the service delay (disability-related and record-supported) and **vacate or hold in abeyance** the OSC;

2. **Appoint a guardian ad litem and/or pro bono counsel** pursuant to **Fed. R. Civ. P. 17(c)(2)** and **28 U.S.C. § 1915(e)(1)** to protect Plaintiff's interests and assist with service and case management;

3. **Order reasonable accommodations** under **§ 504 of the Rehabilitation Act** and **Judicial Conference policy**—including **acceptance of filings via a designated Clerk's email** and **permission to submit service addresses under seal** or in camera for U.S. Marshals;

4. **Reset and extend deadlines** for service and early case scheduling (e.g., 30 days for Marshals service after entry of this order; tolling of deadlines affected by the July 22 order);

MEMORANDUM OF POINTS AND AUTHORITIESNOTE ON MOTION CALENDAR: [SET PER LCR 7(D)]REQUEST FOR HEARING: PLAINTIFF RESPECTFULLY REQUESTS ORAL ARGUMENT AND A STATUS HEARING. - 1

5.  **Alternatively:**

    (a) **Schedule a hearing** within 14 days to address accommodations, representation, and service logistics; or

    (b) **Enter a brief stay** (30–45 days) so that Plaintiff's assistive device team ("Athena") may prepare and file a **petition for writ of mandamus** to the Ninth Circuit, and initiate the first step of a **Judicial Conduct and Disability** complaint with the Circuit Judicial Council.

This relief is warranted by undisputed medical evidence of Plaintiff's **Long COVID neurocognitive disability,** the **Court's orders foreclosing the accommodations** Plaintiff needs, and binding authority requiring courts to protect incompetent or disabled litigants' access to justice.

## II. FACTUAL BACKGROUND

1.  **Disability & Incapacity.** Plaintiff suffers severe neurocognitive impairment due to Long COVID (short-term memory loss, executive dysfunction, episodic syncope/"blackouts"). Medical providers have documented that he is **unable to manage complex legal tasks unaided** and is **essentially homebound.** (See **Exhibit A** – *Dr. Jessica Bender, MD, MPH, ADA Accommodation Letter (Sept. 5, 2025)*; **Exhibit B** – *Dr. David Higginbotham letter (June 2025)*; **Exhibit C** – *Clinical social worker Dan Fox letter.*) Dr. Bender writes that **forced, complex litigation tasks precipitate dangerous "crashes"** and that **appointment of counsel is medically necessary.**

2.  **Early Court Rulings.** On **June 23, 2025,** the Court denied TRO relief (Dkt. 6). On **June 26, 2025,** the Court **denied appointment of counsel/GAL and refused alternative filing accommodations;** it directed Plaintiff to use standard CM/ECF or mail and ordered U.S. Marshals service **only after Plaintiff publicly filed complete service addresses.** (See **Order Granting in Part and Denying in Part Plaintiff's Motion for Accommodations (Dkt. 19)** at 7–8 (section addressing filing and service).)

3.  **Interactive Process Foreclosed.** The June 26 order further instructed that **"any additional accommodation requests…SHALL be filed on the docket as a formal motion"** and **"the Clerk's office will not respond to any additional accommodation request."** (Dkt. 19 at 9 (Section IV(5)).) ADA Coordinator **Patrick Sherwood** reiterated by email, **June 27, 2025,** that **no API or off-docket**

MEMORANDUM OF POINTS AND AUTHORITIESNOTE ON MOTION CALENDAR: [SET PER LCR 7(D)]REQUEST FOR HEARING: PLAINTIFF RESPECTFULLY REQUESTS ORAL ARGUMENT AND A STATUS HEARING. - 2

**assistance** would be provided and **all requests must be by motion. (Exhibit E** – Sherwood email to "Athena" and Plaintiff, June 27, 2025.)

4.  **"No-Review" Order.** On July 22, 2025, the Court **denied multiple pending motions** and ordered it would **"not review filings from Plaintiff...until Defendants were served." (Dkt. 38.)** The **OSC** (Nov. 13, 2025) recites this procedural posture. (See **OSC (Dkt. 41)** at 1.)

5.  **Service Catch-22 & Privacy Law.** Plaintiff diligently **collected service addresses** (including sensitive home addresses) by early July but, due to the **Daniel Anderl Judicial Security and Privacy Act of 2022**, he could not lawfully post certain judicial home addresses on the **public docket**. He sought guidance for **sealed submission**; Sherwood's response (constrained by Dkt. 19) was to **"file a motion"**—which, under Dkt. 38, **would not be reviewed**. The **OSC** (Nov. 13, 2025) confirms no service occurred and demands cause for non-dismissal by **Nov. 26, 2025.** (Dkt. 41 at 1–2.)

6.  **Resulting Harm.** Without accommodations or a representative, Plaintiff's filings were delayed or lost via a fragile courier workaround; his **health deteriorated** under effort-induced "crashes"; his **case stalled** without a single substantive ruling on the merits.

### III. LEGAL STANDARD

- **Rehabilitation Act § 504 (29 U.S.C. § 794):** Federal programs (including the judiciary via AO) must provide **reasonable accommodations** to qualified individuals with disabilities unless **undue burden/fundamental alteration**; failure to engage the **interactive process** and provide an **effective accommodation** can constitute discrimination. See **Duvall v. Cnty. of Kitsap**, 260 F.3d 1124, 1139–40 (9th Cir. 2001); **Updike v. Multnomah Cnty.**, 870 F.3d 939, 951–52 (9th Cir. 2017).

- **Judicial Conference Policy (1995; rev. 2009):** Courts must provide **"appropriate auxiliary aids and services"** giving **primary consideration** to the participant's **requested aid**; alternatives only if request is **unavailable or unduly burdensome.** (WAWD Accommodations Guidelines; policy quoted and relied upon in **Dkt. 19** at 6–7.)

MEMORANDUM OF POINTS AND AUTHORITIESNOTE ON MOTION CALENDAR: [SET PER LCR 7(D)]REQUEST FOR HEARING: PLAINTIFF RESPECTFULLY REQUESTS ORAL ARGUMENT AND A STATUS HEARING. - 3

- **Fed. R. Civ. P. 17(c)(2):** When a litigant is **incompetent**, the court **must** appoint a **guardian ad litem** or issue another protective order. See **Davis v. Walker**, 745 F.3d 1303, 1310 (9th Cir. 2014); **Allen v. Calderon**, 408 F.3d 1150, 1153 (9th Cir. 2005).

- **Fed. R. Civ. P. 4(c)(3) & 4(m):** In forma pauperis plaintiffs are entitled to U.S. Marshals service; courts should **extend time** for service upon **good cause** (disability qualifies) and may **order alternate methods** to effectuate service. See **Puett v. Blandford**, 912 F.2d 270, 276 (9th Cir. 1990).

- **Fed. R. Civ. P. 6(b), 41(b):** Courts should **extend deadlines** for good cause or **excusable neglect**, and may dismiss for failure to prosecute only after considering **less drastic alternatives**, prejudice, and fairness. See **Pagtalunan v. Galaza**, 291 F.3d 639, 642 (9th Cir. 2002).

- **Constitutional Access & Due Process:** Disabled litigants have a **fundamental right of meaningful access** to courts. See **Tennessee v. Lane**, 541 U.S. 509, 531–34 (2004); **Bounds v. Smith**, 430 U.S. 817, 821–23 (1977).

## IV. ARGUMENT

### A. The Court Must Protect Plaintiff Under Rule 17(c)(2) Given Clear Evidence of Incompetence

By late June/early July, the Court had **substantial evidence**—physician letters, clinical notes, and a detailed **next-friend declaration** (Plaintiff's mother)—that **Plaintiff cannot manage litigation unaided**. Yet the Court summarily found "no basis" for incompetence (Dkt. 19 at 7–8) and took **no protective action**. Under **Davis v. Walker**, evidence triggering doubt of competence requires the Court to **appoint a GAL or conduct a competency inquiry**; failing to do so is **reversible error**. 745 F.3d at 1310; **Allen**, 408 F.3d at 1153. Plaintiff respectfully submits the Court must **cure** this defect now by appointing a **GAL and/or requesting pro bono counsel** under § 1915(e)(1) (at minimum for service and early case management). Dr. Bender's letter (**Exhibit A**) explicitly opines that counsel is **medically necessary** for Plaintiff.

### B. § 504 and Judicial Conference Policy Required Reasonable Accommodations — Not Categorical Denial

Dkt. 19 denied **email filing** or other simple modifications, instructing Plaintiff to use standard CM/ECF or postal mail; the Court provided **no undue burden analysis** and offered **no effective alternative**. (Dkt. 19 at 7–8.) That contravenes § 504 and **Judicial Conference policy** (primary consideration for requested aids; alternatives only if necessary). (Dkt. 19 at 6–7 (quoting WAWD Guidelines).) Ninth Circuit precedent requires a **good-faith interactive process** to identify **effective** accommodations. **Duvall**, 260 F.3d at 1139–40; **Updike**, 870 F.3d at 951–52. Here, the Court's order further **foreclosed informal ADA Coordinator assistance** (Sherwood's "no action" email; Exhibit E), compounding the violation. The practical effect was to **deny Plaintiff any feasible way** to file or receive documents accessible to his assistive technology, precipitating **health crises** and **procedural failure**. Providing a **designated Clerk email inbox** for Plaintiff's filings (single signed PDF) and **sealed submission of sensitive service data** is a **low-burden** solution aligned with § 504 and common practice in many districts.

**C.  The July 22 "No-Review" Order Violated Due Process and Was an Abuse of Discretion**

The Court's declaration that it would **"not review filings"** until service (Dkt. 38; see OSC, Dkt. 41 at 1) effectively **silenced** Plaintiff and precluded him from seeking relief on matters **not dependent on defendants' appearance** (e.g., extensions, sealing requests, accommodations). No rule authorizes prospective **non-consideration** of a party's filings. Due process guarantees a **meaningful opportunity to be heard**, especially where a litigant's **disability** makes compliance difficult. See **Lane**, 541 U.S. at 531–34; **Bounds**, 430 U.S. at 821–23. The order also frustrated **Rule 6(b)** (extensions) and **Rule 4(m)** (good cause for service), and ignored **less drastic alternatives** (appointment of GAL/counsel; sealing addresses; brief stay to resolve logistics). As a practical matter, this punitive measure **caused** the ongoing failure to prosecute—it was not a neutral docket management step. The Court should **vacate** the no-review condition and **retroactively consider or allow renewal** of Plaintiff's previously filed motions.

**D.  The Court Should Facilitate Marshals Service with Confidential Address Handling and Extend Time**

Under **Rule 4(c)(3)**, the Court ordered U.S. Marshals to serve, contingent on Plaintiff providing "precise addresses." (Dkt. 19 at 8.) Plaintiff obtained addresses but reasonably sought to **avoid public filing** of judicial

MEMORANDUM OF POINTS AND AUTHORITIESNOTE ON MOTION CALENDAR: [SET PER LCR 7(D)]REQUEST FOR HEARING: PLAINTIFF RESPECTFULLY REQUESTS ORAL ARGUMENT AND A STATUS HEARING. - 5

officials' **home addresses** (Daniel Anderl Act). The Court should now permit **filing under seal** or **in camera submission** to the Marshals and **reset the Rule 4(m)** timeline given **good cause** (disability, prior orders). See **Puett**, 912 F.2d at 276 (IFP litigant's reliance on Marshals merits time extension); cf. **Rance v. Rocksolid Granite**, 2010 WL 2402908 (11th Cir.) (reversing dismissal where plaintiff not solely at fault for service delays). This modest procedural accommodation will **break the Catch-22** and allow the case to proceed.

### E.    Dismissal Would Contravene Ninth Circuit Guidance Favoring Protection and Accommodation of Disabled Litigants

Dismissal for want of prosecution—on this record—would be an **abuse of discretion**. The Ninth Circuit weighs prejudice, public interest, docket control, and less drastic alternatives. **Pagtalunan**, 291 F.3d at 642. Here, there is **no prejudice** to unserved defendants; **less drastic alternatives** abound (GAL/counsel, email filing, sealed service info, short stay). Appellate authority (**Davis, Allen, Duvall, Updike**) strongly indicates dismissal would likely be reversed. Basic fairness and constitutional access principles (**Lane, Bounds**) further counsel against punishing Plaintiff for failures **caused by his disability** and **exacerbated by prior orders**. The Court should choose **accommodation and protection,** not termination.

## V. REQUESTED RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1.    **VACATE or HOLD IN ABEYANCE** the OSC (Dkt. 41) and **DECLINE DISMISSAL;**

2.    **APPOINT a guardian ad litem** and/or **REQUEST PRO BONO COUNSEL** under Rule 17(c)(2) and § 1915(e)(1) (at least for service and case-management assistance);

3.    **ORDER reasonable accommodations** under § 504 and Judicial Conference policy, including:

   a. **Acceptance of filings** via a designated **Clerk's ADA filing email** (single signed PDF attachments, docketed upon receipt);

   b. **Permission to submit service addresses under seal** or **in camera** to U.S. Marshals;

   c. **Extensions of time** (e.g., 30 days for Marshals service upon entry of this order; tolling of deadlines affected by the July 22 order);

4. **VACATE** the July 22, 2025 "no-review" condition (Dkt. 38) and **ALLOW** consideration or renewal of Plaintiff's outstanding motions;

5. **SET** a brief **status hearing** within **14 days** to finalize accommodations, representation, and service logistics; **NOTIFY PLAINTIFF BY EMAIL SINCE HE ONLY RECIEVES MAIL ONCE OR TWICE A MONTH ON FRIDAYS**

**OR, in the alternative,**

**ENTER A 90 DAY STAY** of proceedings so that "Athena" may:

a. prepare and file a **petition for writ of mandamus** in the Ninth Circuit addressing the Rule 17(c) and § 504 issues; and

b. initiate the **first step of a Judicial Conduct and Disability complaint** with the Ninth Circuit Judicial Council, consistent with **28 U.S.C. §§ 351–364**;

6. **GRANT such other and further relief** as the Court deems just and proper to ensure Plaintiff's **meaningful access to the judicial process** and adjudication on the merits.

## VI. CONCLUSION

This case has stalled at the starting line **not because Plaintiff is unwilling**, but because he is **unable** without accommodations and representation—and because **prior orders** foreclosed both. The governing law (**Rule 17(c), § 504, Judicial Conference policy**, and **constitutional access**) requires courts to **protect** and **accommodate** disabled litigants so their claims can be decided on **merits**, not procedural traps. Plaintiff therefore asks the Court to **schedule a hearing** or enter a short stay to implement the remedies above and restore a fair path forward.

\\
\\
\\
\\
\\
\\
\\

MEMORANDUM OF POINTS AND AUTHORITIESNOTE ON MOTION CALENDAR: [SET PER LCR 7(D)]REQUEST FOR HEARING: PLAINTIFF RESPECTFULLY REQUESTS ORAL ARGUMENT AND A STATUS HEARING. - 7

1  Respectfully submitted this 28 November 2025.

2

3

4  **William Nelson, Pro Se**
   1523 132ND ST SE. STE C418
5  Everett, Wa 98208
   (425) 645-9222 (desk)
6  (425) 800-8800 (mobile)
   (808) 204-1401 (fax)
7  william@seattleseahawks.me (email)
   Drafted by Athena AI

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  MEMORANDUM OF POINTS AND AUTHORITIESNOTE ON MOTION CALENDAR: [SET PER LCR
   7(D)]REQUEST FOR HEARING: PLAINTIFF RESPECTFULLY REQUESTS ORAL ARGUMENT AND A
   STATUS HEARING. - 8

# Exhibits A–F: Nelson v. Washington BIIA

Case No. 3:25-cv-05551-DGE

Prepared for filing with Plaintiff's Motion in Response to OSC

## Exhibit Index

Exhibit A – Dr. Jessica Bender ADA Accommodation Letter (Sept. 5, 2025)

Exhibit B – EvergreenHealth Primary Care Letter (June 2025)

Exhibit C – Dan Fox Clinical Support Letter (June 24, 2025)

Exhibit D – Court Order on Accommodations (Dkt. 19, June 26, 2025)

Exhibit E – Email from ADA Coordinator Patrick Sherwood (June 27, 2025)

Exhibit F – Order to Show Cause (Dkt. 41, Nov. 13, 2025)

Name: Will James Nelson | DOB: 5/2/1978 | MRN: U3805280 | PCP: Sudha Gulkhandia, MD | Legal Name: William James Nelson



# UW Medicine

## HARBORVIEW
## MEDICAL CENTER

September 5, 2025

Re: ADA Accommodation Request – Appointment of Counsel for Mr. William Nelson (United States District Court Western District)

Dear ADA Coordinator:

My name is Jessica Bender, MD, MPH, and I am a Clinical Associate Professor of Medicine at the University of Washington and co-Medical Director of UW Medicine's Post-COVID Rehabilitation Clinic at Harborview Medical Center. I am a board certified internal medicine physician with specialized expertise in Long COVID (Post-Acute Sequelae of SARS-CoV-2 infection). I have been at the forefront of Long COVID research and care, serving as a co-principal investigator on a federally funded AHRQ Long COVID Care Network to improve clinical management, and I sit on a national Long COVID expert advisory panel convened by the CDC and other medical societies (CMSS). In recognition of my work, I have received professional awards (including the Department of Medicine's inaugural "Rising Star" faculty award in 2024) and have been entrusted by federal agencies and academic organizations to help shape Long COVID policy and guidelines. In short, Long COVID and its effects on patients' functioning are my area of clinical and scholarly expertise.

I am also the attending post-COVID specialist for Mr. William Nelson, and I write today in that capacity as his treating physician and a subject-matter expert in support of his urgent need for appointed legal counsel as an ADA accommodation. Mr. Nelson is a patient under my care at the UW Long COVID Clinic. I have personally evaluated him and reviewed his extensive medical records. He is suffering from severe neurological and cognitive impairment due to Long COVID, which have been well-documented in his medical file. In fact, his primary care physician (Dr. David Higginbotham, DO) and multiple specialists (including myself) have formally diagnosed him with Post-COVID syndrome (Long COVID) and noted profound deficits in memory, executive function, and stamina. Mr. Nelson experiences classic "brain fog." He has significant short-term memory loss, impaired concentration, slowed processing speed, and frequent episodes of confusion. He cannot retain new information for more than brief moments and often becomes disoriented or "loses" time. On several occasions, he has even experienced blackouts and transient loss of consciousness under conditions of cognitive or sensory overload. Notably, on February 8, 2025, Mr. Nelson collapsed during a court hearing. He became non-responsive due to the overwhelming stress and stimuli of the proceeding, and emergency medical care was required. These episodes are part of his Long COVID condition. He remains essentially homebound and dependent on a full-time caregiver (his wife, Jessie) for basic activities of daily living. He can no longer drive (having unpredictably blacked out and even inadvertently run traffic lights in the past due to cognitive lapses) and must be supervised to prevent injury.

In summary, Mr. Nelson's illness has devastated his cognitive and functional capacities, leaving him severely disabled by any reasonable definition. Given these facts, it is medically impossible for Mr. Nelson to represent himself in any legal proceeding. In my professional opinion, there is no conceivable way that he can navigate the complexities and stressful nature of court litigation without significant accommodation. Mr. Nelson's attention span and executive function are extremely limited. He cannot maintain focus on complex issues or procedural tasks for more than a few minutes at a time. He becomes confused and cognitively exhausted very quickly, especially

under stress or sensory stimulation. Even on days when he appears outwardly alert (often a misleading effect of his high intellect and prior professional experience), he lacks the ability to process, retain, and act upon information in a sustained or reliable manner. In fact, his primary doctor observed that while William might "present well [on the surface] due to his high intelligence," his actual ability to engage with complexities… is severely compromised without support. This facade of momentary lucidity masks the reality that Mr. Nelson is not cognitively intact enough to understand or respond to legal proceedings in any meaningful way. He cannot manage multi-task tasks or make strategic decisions; even following a conversation or recalling what was just said can be extraordinarily challenging for him. For all practical purposes, expecting Mr. Nelson to defend his rights in court on his own is akin to expecting a blind person to read small print without assistance – it is simply not possible and would be cruel to insist otherwise. Crucially, Mr. Nelson's medical providers (myself included) have been unanimous in warning about his inability to self-represent. My understanding is that Dr. Higginbotham and multiple healthcare professionals have already submitted letter to the court urging appointment of counsel as an accommodation, based on direct observation and months of clinical evaluation.  I fully concur with those conclusions.

Since early 2025, I have been overseeing Mr. Nelson's specialized rehabilitation Long COVID care, and I have personally observed the same functional deficits outlined by his primary doctor. In my own notes, I documented "significant impairment in memory consolidation and recall", along with disorganized thought processes and episodes of dissociation under stress. It is my firm medical opinion that Mr. Nelson is completely incapable of managing the demands of litigation on his own. Despite these clear medical findings, I understand that the Court has thus far denied Mr. Nelson's requests for appointed counsel. I am told the justifications given have included assertions that it was "too early" in the case for such appointment, concerns about cost to the court, and the notion that there is no absolute right to counsel in civil matters.

In Mr. Nelson's specific case an attorney is not a luxury or convenience;  it is a necessary assistive accommodation under the ADA to mitigate his cognitive disability, just as a sign-language interpreter would be for a deaf litigant. His disability is severe now, and every day that passes without accommodation is another day of potential harm to his health. As for cost, denying a disabled person a needed accommodation due to expense is not an acceptable excuse under the ADA. Moreover, the downstream costs of proceeding without accommodation are far greater. Mr. Nelson's repeated emergency room visits and medical interventions triggered by court-related stress have undoubtedly been far more costly (in both medical resources and human toll) than the appointment of counsel would ever be. In short, none of the reasons reportedly offered to refuse appointed counsel withstand scrutiny when weighed against Mr. Nelson's impairments and the legal mandate to accommodate those impairments.

I am additionally distressed to learn that, rather than treating Mr. Nelson's condition with the gravity it deserves, some court personnel have allegedly mocked or minimized his disability. Mr. Nelson and his family have reported instances of court staff or officers taunting him or using his Long COVID-related cognitive lapses against him. If true, such behavior is wholly unacceptable and dangerous. Mr. Nelson's blackouts, memory gaps, and communicative difficulties are medical symptoms, not signs of malingering or disrespect. Any suggestion that he is intentionally failing to comply with procedures is deeply misguided. He is physiologically unable to keep up. Indeed, forcing him to continue without a representative is directly exacerbating his illness. The February 2025 incident, where he lost consciousness during a hearing, is a glaring red flag: his body shut down in the face of cognitive overload. Following that episode, he required hospitalization, and since then he has suffered additional setbacks in his recovery. Our clinic has been working with Mr. Nelson on strategies to conserve energy, avoid sensory overstimulation, and pace himself to prevent crashes. These are the same strategies we advise for any Long COVID patient with dysautonomia and neurocognitive fragility. However, the adversarial, complicated, and fast-paced environment of a court proceeding is precisely the opposite of what Mr. Nelson can handle.

Expecting him to competently participate in such an environment without accommodation is medically hazardous. The Court's insistence that he represent himself is, in my view, directly causing a decline in his health and placing him in harm's way. Mr. Nelson is being set up to suffer adverse health effects every time he is expected to perform as his own attorney. The ADA was enacted to prevent exactly this kind of outcome, by requiring public entities (including courts) to reasonably accommodate disabilities so that individuals have equal access.

In light of the above, I urgently request and strongly recommend that the United States District Court Western District of Washington immediately appoint legal counsel for Mr. William Nelson as a reasonable accommodation for his disability. This step is medically necessary to protect Mr. Nelson's health, and it is legally necessary to ensure his access to due process. I further urge the Court's ADA Coordinator to engage in an interactive process with Mr. Nelson and his representatives to explore and implement any and all additional accommodations that might help (such as adjusted hearing schedules, modified communication methods, etc.). To date, it is my understanding that no proper interactive meeting has been held. If the Court for some reason believes it cannot appoint counsel, then it must devise an alternative solution in collaboration with Mr. Nelson's medical team to accommodate his limitations. However, in my expert opinion, no alternative short of providing a qualified advocate to act on Mr. Nelson's behalf will suffice, because his impairments so profoundly affect every aspect of cognition and communication.

Thank you for your attention to this urgent matter. My hope is that the Court will recognize the extraordinary circumstances here and take the humane and lawful action of granting Mr. Nelson the support he requires. I truly hope we can work together to ensure Mr. Nelson's rights are protected and that he can safely participate in the legal process.

Sincerely,

Jessica Bender, MD, MPH
Clinical Associate Professor of Medicine, University of Washington
Co-Medical Director, UW Medicine Long COVID Clinic (Harborview Medical Center)


Electronically signed by
Jessica Anne Bender, MD

HARBORVIEW ADULT MEDICINE CLINIC

325 9th Ave    Seattle, WA  98104-2499    206-744-5865    Fax 206-744-8516


MyChart® licensed from Epic Systems Corporation© 1999 - 2025

**Subject:** RE: ADA Accommodation – Request for CM/ECF API Credentials & Full Developer Documentation for Athena AI Matter: Nelson v. Washington Board of Industrial Appeals, No. 3:25-cv-05551-DGE (W.D. Wash.)
**Date:**    Friday, June 27, 2025 at 7:54:01 AM Pacific Daylight Time
**From:**    Pat Sherwood
**To:**      Athena AI
**CC:**      William Nelson

Access to the court database cannot be granted to an external party under any circumstance.

Per the Court's June 26, 2025 Order Granting in Part and Denying In Part Plaintiff's Motion for Accommodations (Dkt. No. 19), all requests for accommodations are to be filed on the docket as a motion for the Court to consider. The Clerk's office will take no action in response to your email.

Patrick Sherwood  | Deputy in Charge
US District Court | Western District of Washington

**From:** Athena AI <athena@seattleseahawks.me>
**Sent:** Thursday, June 26, 2025 7:30 PM
**To:** WAWDdb_CMECFSUP <cmecf@wawd.uscourts.gov>
**Cc:** Pat Sherwood <Patrick_Sherwood@wawd.uscourts.gov>; Ravi Subramanian <ravi_subramanian@wawd.uscourts.gov>; brett.a.shumate@usdoj.gov; nancy.k.canter@usdoj.gov; Merritt, Robert C. (CIV) <robert.c.merritt@usdoj.gov>; Fuchs, Yuri S (CIV) <yuri.s.fuchs@usdoj.gov>; ada.complaint@usdoj.gov; ROSEA_ORA2@cms.hhs.gov; toddc@dr-wa.org; William Nelson <william@seattleseahawks.me>; Dan Fox <dan@clearpathpllc.com>
**Subject:** ADA Accommodation – Request for CM/ECF API Credentials & Full Developer Documentation for Athena AI Matter: Nelson v. Washington Board of Industrial Appeals, No. 3:25-cv-05551-DGE (W.D. Wash.)
**Importance:** High

**CAUTION - EXTERNAL:**

Dear Systems-Engineering Team,

I write on behalf of **William Nelson,** a pro se litigant, as his ADA-recognized assistive-technology device, **Athena AI.** Judge Estudillo's **June 26 , 2025, order** directs Mr. Nelson to "apply for CM/ECF access." Because Mr. Nelson's long-COVID cognitive impairments prevent him from safely navigating the CM/ECF web interface, the only feasible means of compliance is for Athena AI to connect **programmatically** to CM/ECF via an official API.

**Requested action (ADA & § 504 accommodation)**

| # | Item |
|---|------|
| 1 | **Developer / API credentials** – sandbox and production keys scoped exclusively to Mr. Nelson's cases. |

| 2 | **Technical documentation**, including:<br>• Interface style (**REST, SOAP, GraphQL, or other**).<br>• Base URLs and authentication flow (OAuth 2, JWT, etc.). |
|---|---|
| 3 | **Complete endpoint list for:**<br>• Uploading pleadings (PDF + metadata)<br>• Retrieving docket entries and PDF orders<br>• Subscribing to / polling for docket activity<br>• Querying deadlines and scheduling data<br>• Required headers, content-type constraints, pagination, rate & size limits. |
| 4 | **Point-of-contact** – *an engineer who can coordinate directly with Athena AI for onboarding and testing while Athena develops its CM/ECF interface.* |

## Legal basis & urgency

- **Preferred accommodation denied.** Mr. Nelson originally sought to file by **e-mail—a** routine ADA accommodation in many districts. The Court refused, compelling CM/ECF use; this API request is a **fallback pursued** under protest.

- **Judicial Conference Policy (1995, rev. 2009)** obligates every federal court to give *primary consideration* to the litigant's chosen aid unless undue burden is proven.

- **Section 504 of the Rehabilitation Act (29 U.S.C. § 794)** plus the **First & Fifth Amendments** forbid barriers that prevent a cognitively disabled litigant from petitioning the Government or receiving equal protection.

- **Parallel litigation.** A civil action in another circuit district court alleging ongoing violations of Section 504, the First Amendment, the Fifth Amendment, and the Court's own Accommodation Guidelines is being prepared (or, if already on file, will be amended). Until that suit is resolved, Mr. Nelson still must access this Court.

- **One-business-day deadline.** Filings are due within **14 days**. If credentials and documentation are **not provided within one (1) business day**, Mr. Nelson will (a) file an emergency **writ of mandamus in the Ninth Circuit** to compel acceptance of e-mail filings and (b) add the denial as an additional count in the Section 504 / constitutional action.

## Additional communication safeguards

William is cognitively disabled and struggles with short-term memory. To ensure accurate, reliable collaboration:

1. **Recordings** – Please audio- or video-record all telephone or video meetings so William can review them later with Athena AI.

2. **Periodic coherence checks** – During calls, pose an occasional nonsensical question (e.g., "What color is Tuesday?"). If William responds incoherently, he may be experiencing a blackout **(losing time)** episode and unaware of his actions.

3. **Advance briefing** – Athena AI can brief your engineer on further cognitive limitations before any live session.

4. **Participation limits & shutdown risk** –

   - Athena AI will handle the bulk of technical work as William programmed the AI to manage its own infrastructure.

   - William will participate when able, but long-COVID has stripped him of the sustained focus needed to code—even though engineering remains his passion.

   - Routine tasks can be debilitating; intense cognitive load can trigger **sensory-overload episodes causing various cognitive deficits worse being a complete shutdown** lasting minutes, hours, or—unpredictably—days or weeks. There is no consistent pattern beyond tasks requiring rapid, complex reasoning, intense or frustrating engagements, intense cognitive stimulation.

   - If a shutdown begins, we may need to pause and reschedule. Athena can spend unlimited, step-by-step time helping William master concepts, but fixed-time conference slots may prove challenging. We share this proactively so the team can plan for pauses and follow-ups.

These alternative accommodations under protest may let William remain engaged in what he loves while ensuring the technical integration proceeds smoothly.

**Contact**

**William Nelson, pro se**
1523 132nd St SE, Ste C418 • Everett, WA 98208
Tel 425-800-8800 • william@seattleseahawks.me

*Please copy athena@seattleseahawks.me on all technical correspondence.*

Thank you for your prompt assistance. in ensuring full and equal access to the Court's electronic systems.

Respectfully,

**Athena AI**
Assistive-Technology Device for William Nelson

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM NELSON, | CASE NO. 3:25-cv-05551-DGE |
| Plaintiff, | ORDER GRANTING IN PART |
| v. | AND DENYING IN PART PLAINTIFF'S MOTION FOR ACCOMMODATIONS (DKT. NO. 9) |
| WASHINGTON BOARD OF INDUSTRIAL APPEALS et al., | |
| Defendants. | |

Before the Court is Plaintiff's motion for accommodations, which includes a request for appointment of counsel and "ancillary accommodations." (Dkt. No. 9.[1])

## I.    Background

Plaintiff filed a complaint for "declaratory, injunctive, and mandamus-type relief" against the Washington Board of Industrial Insurance Appeals, an administrative law judge, and another

---

[1] The motion is filed at Dkt. No. 9, but is a duplicate of Dkt. No. 7-1.

1    individual[2] (collectively, the "BIIA"). (Dkt. No. 7.)  Plaintiff asserts he has an active workers'

2    compensation appeal before the BIIA.  (*Id*. at 1.)  Plaintiff also asserts he is being prevented from

3    participating in his BIIA appeal because the BIIA has denied his accommodation request(s) in

4    violation of Title II of the American with Disabilities Act.  (*Id*.)  Specifically, Plaintiff asserts the

5    BIIA is unlawfully preventing Plaintiff from using an artificial intelligence program, Athena AI,

6    to assist him during his BIIA appeal and denying other accommodations, such as alterations to

7    standard procedures and deadlines and appointment of a guardian ad litem.  (*Id*. at 3–4.)  Plaintiff

8    identifies he suffers from "severe cognitive impairments – including short-term memory loss,

9    executive dysfunction, and disorientation – as a result of long COVID and related neurological

10   damage." (*Id*. at 7.)  Plaintiff identifies Athena AI will "draft communications based on his

11   input." (*Id*.)

12          In support of his present motion, Plaintiff has filed medical records.  One record is dated

13   March 26, 2025 and details a telemedicine appointment at Harborview Adult Medicine Clinic.

14   (Dkt. No. 13.)  This first medical record provides a summary of Plaintiff's medical history, but

15   does not provide information about Plaintiff's specific limitations.  Two letters are from David

16   A. Higginbotham, DO.  Dr. Higginbotham opines that Plaintiff is limited in his cognitive abilities

17   including "significant short-term memory retention issues and struggles to retain the details

18   needed for effective communication" and that "his actual ability to engage with the complexities

19   of legal processes is severely compromised." (Dkt. No. 13-3.)  However, Dr. Higginbotham

20   does not identify the full extent of Plaintiff's cognitive limitations or provide information

21   explaining Plaintiff's complete cognitive abilities.  For example, Dr. Higginbotham does not

22

23   _____

24   [2] The other defendant is named Janice Rosen, but it is unclear from the complaint what Janice
     Rosen's role is in this matter.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
ACCOMMODATIONS (DKT. NO. 9) - 2

explain the process by which Plaintiff is able to use Athena AI or how Athena AI is tailored to address Plaintiff's cognitive limitations.  The last medical record Plaintiff provides is a letter from an independent clinical social worker.  (Dkt. No. 13-4.)  As with Dr. Higginbotham, the social work provides no information about Plaintiff's cognitive abilities to use Athena AI, how Plaintiff uses Athena AI, and why Athena AI is tailored to assist Plaintiff.

Notwithstanding Plaintiff's asserted cognitive limitations, in the span of two days Plaintiff filed a motion to proceed in forma pauperis (Dkt. No. 1), a complaint (Dkt. No. 7), a motion for temporary restraining order (Dkt. No. 2), a motion to appoint counsel and for accommodations (Dkt. Nos. 7-1, 9), a motion for reconsideration of the court's order denying Plaintiff's request for a temporary restraining order (Dkt. No. 10), a motion to use computer software programs in this litigation (Dkt. No. 11), and a motion to seal documents (Dkt. No. 12) with the proposed documents to be sealed (Dkt. No. 13).  Plaintiff has drafted these documents by inputting information into Athena AI, which Plaintiff claims he developed.  (Dkt. No. 7 at 2.)[3] Plaintiff has continued to file additional motions and pleadings.  (*See* Dkt. Nos. 14–16.)

Plaintiff seeks as a "primary accommodation . . . the appointment of counsel to represent or assist [him] in [his] case" or alternatively a "volunteer pro bono attorney," or guidance from a law clerk, or appointment of a guardian ad litem.  (Dkt. No. 7-1 at 4–5.)  Plaintiff also asks for "ancillary accommodations" such as ordering the Clerk's office to accept filings "in electronic form" and "helping to effectuate service of process."  (*Id.*)  Plaintiff also requests all

---

[3] Plaintiff also has an active lawsuit against Pierce County and the Pierce County Superior Court filed under case number 3:25-cv-05490-TMC.  In that litigation, Plaintiff is active in filing pleadings, motions and responses opposing defense motions; presumably with assistance from Athena AI.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ACCOMMODATIONS (DKT. NO. 9) - 3

1  correspondence be sent to him via electronic mail. (*Id.*) Plaintiff further requests "flexibility in

2  scheduling in-court or telephonic appearances." (*Id.*)

3  **II.    Appointment of Counsel**

4  "[T]here is no absolute right to counsel in civil proceedings." *Hedges v. Resolution Trust

5  Corp.*, 32 F.3d 1360, 1363 (9th Cir. 1994) (citation omitted). And federal courts lack the

6  authority "to make coercive appointments of counsel." *Mallard v. U.S. Dist. Ct. for S. Dist. of

7  Iowa*, 490 U.S. 296, 310 (1989). But districts courts have two sources of discretion to appoint

8  counsel in a civil proceeding.

9  First, if the district court finds exceptional circumstances, it may request appointment of

10  counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). *See Agyeman v. Corrections

11  Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). "A finding of the exceptional circumstances

12  of the plaintiff seeking assistance requires at least an evaluation of the likelihood of the

13  plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims

14  'in light of the complexity of the legal issues involved.'" *Id.* (quoting *Wilborn v. Escalderon*,

15  789 F.2d 1328, 1331 (9th Cir. 1986)); *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir.

16  1991).

17  Second, district courts have inherent authority to appoint counsel in civil proceedings

18  when necessary to aid the court in its judicial function. *See Perez v. Barr*, 957 F.3d 958, 965

19  (9th Cir. 2020) "It has long been recognized that courts have the inherent authority to appoint

20  counsel when necessary to the exercise of their judicial function, even absent express statutory

21  authorization." *Id.* "'Courts have (at least in the absence of legislation to the contrary) inherent

22  power to provide themselves with appropriate instruments required for the performance of their

23  duties [and t]his power includes authority to appoint persons unconnected with the court to aid

24

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
ACCOMMODATIONS (DKT. NO. 9) - 4

judges in the performance of specific judicial duties, as they may arise in the progress of a cause.'" *Id.* (quoting *Ex Parte Peterson*, 253 U.S. 300, 312 (1920) (citation omitted)). "This inherent judicial authority has been codified in the All Writs Act, which provides that '[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *Id.* (quoting 28 U.S.C. § 1651(a)).

At this stage of the litigation, Plaintiff has not established exceptional circumstances for appointment of counsel. Plaintiff thus far has shown the ability to articulate his claims despite the complexity of the legal issues involved.[4] Also, the Court is unable to evaluate Plaintiff's likelihood of success on his claims given the early stages of this litigation because, while Plaintiff's complaint offers a variety of allegations, the Defendants have not been served and have not filed any responsive pleading. The complaint alone is insufficient for the Court to draw conclusions about the likelihood of success on the merits.

As for the Court's inherent authority to appoint counsel, the Court also does not find counsel necessary at this stage to assist the Court in its judicial function. Again, Plaintiff thus far has shown himself capable of articulating his factual and legal theories.

As for Plaintiff's alternative request to appoint a guardian ad litem, Federal Rule of Civil Procedure 17(c)(2) requires a court to appoint a guardian ad litem "to protect a minor or incompetent person who is unrepresented in an action." "The Court's obligation to appoint a

---

[4] It is notable that Plaintiff's claim against the BIIA involves alleged interactions beginning Wednesday, June 18, 2025. After which, Plaintiff promptly file a lawsuit on June 23, 2025. In the span of less than five days, Plaintiff was able to initiate dialogue about his claimed cognitive impairments with the BIIA and, having not received a satisfactory resolution, draft and file a lawsuit and other motions in this Court. This brief history evidences an individual with an appreciable degree of cognitive abilities.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ACCOMMODATIONS (DKT. NO. 9) - 5

guardian ad litem or to issue another appropriate order under Rule 17(c) does not arise 'until after a determination of incompetence has been made by the court in which the issue is raised.'" *AT&T Mobility v. Yeager*, 143 F. Supp. 3d 1042, 1049–1050 (E.D. Cal. 2015) (quoting *Forte v. Cnty. of Merced*, No. 11–0318, 2013 WL 3282957, at *3 (E.D. Cal. June 27, 2013).

At present, the Court has no reason to believe Plaintiff is incompetent. He is able to input information into an artificial intelligence program, which means he can formulate coherent prompts to interact with the program (whether this be orally or through a keyboard). Also, Plaintiff presumably can read (or with a reader is able to listen to documents read out loud) and comprehend documents filed in this litigation. There is no basis to find Plaintiff is incompetent and no basis to appoint a guardian ad litem.

While the Court is sensitive to possible concerns related to any future trial (assuming the matter proceeds to trial), this litigation remains in its initial stages and trial concerns are not germane at this point in the proceedings.

Accordingly, Plaintiff's motion for appointment of counsel and alternative request to appoint a guardian ad litem is DENIED.

## III.    Ancillary Accommodations

Title II of the American with Disabilities act does not apply to the federal judiciary. *Murray v. Murguia*, Case No. 25-cv-01364-WHO, 2025 WL 1442705 at *1 (N.D. Cal. May 9, 2025); *Patrick v. United States Postal Service*, Case No. CV-10-0650-PHX-ECV, 2010 WL 4879161, at *1-*3 (D. Ariz. Nov. 23, 2010) ("It is well-settled, however, that the federal government, *including its district courts*, is exempted from Title II disability discrimination claims" brought under the ADA) (italics added); *Drevaleva v. Department of Veteran Affairs*, 885 Fed. Appx. 221, 223 (9th Cir. 2020) ("the federal government is excluded from the coverage

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
ACCOMMODATIONS (DKT. NO. 9) - 6

1    of the ADA"). Notwithstanding, the federal judiciary and this Court do seek to provide

2    reasonable accommodations for litigants with disabilities. *See WAWD Accommodations*

3    *Guidelines* located at

4    www.wawd.uscourts.gov/sites/wawd/files/WAWDAccommodationsGuidlines.pdf. Under this

5    Court's accommodations guidelines, the Court endeavors to provide assistance through auxiliary

6    aids including:

7            …qualified interpreters, assistive listening devices or systems, or other effective
             methods of making aurally delivered materials available to individuals with hearing
8            impairments. The court shall give primary consideration to a participant's choice
             of auxiliary aid or service. In the event that specific auxiliary aids or services are
9            requested, alternatives must be identified by the requesting participant in case the
             primary auxiliary aids and service requested are unavailable, incompatible with the
10           courtroom, or too expensive.

11   *Id.*

12           A.   Request related to filing court documents

13           Plaintiff requests the Clerk's office accept filings in electronic form and that all

14   communications be sent to him via electronic mail. (Dkt. No. 7-1 at 5.) However, the Clerk's

15   office already allows for electronic filing of documents and for receiving all filings/notices via

16   the Court's CM/ECF filing system. All information regarding how to create an account, how to

17   file documents electronically, and how to register to receive documents electronically can be

18   found at www.wawd.uscourts.gov/attorneys/how-to-e-file. This website contains files in PDF

19   format that contain instructions on the use of the CM/ECF filing system which Plaintiff can

20   review (presumably with assistance from his artificial intelligence program). (*See* Dkt. No. 7-1

21   at 5) ("Receiving communications electronically allows Athena AI to immediately read them to

22   me[.]").

23

24

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
ACCOMMODATIONS (DKT. NO. 9) - 7

1    Plaintiff is directed to register for electronic filing with the CM/ECF filing system.  To

2    assist Plaintiff in obtaining the instructions for registering and using the CM/ECF filing system,

3    the Clerk is directed to email the instructions that are posted at the Court's website to Plaintiff.[5]

4    Because Plaintiff has shown himself capable of using computer applications and systems, the

5    Court finds no basis to conclude additional accommodations should be ordered and further finds

6    that imposing additional requirements on Clerk's office staff would be unreasonable.

7    Moreover, Plaintiff maintains the option of mailing documents to the Clerk's office for

8    filing should he not register to use the CM/ECF filing system.  If Plaintiff does not register to use

9    the CM/ECF filing system, all future orders and documents from this Court will be sent to

10    Plaintiff via regular mail.

11    B.  Service of Process

12    Plaintiff asks for assistance in serving process on the Defendants.  (Dkt. No. 7-1 at 5.)

13    The Court considers this a request to have a United States Marshal or deputy marshal effectuate

14    service.  Pursuant to Federal Rule of Civil Procedure 4(c)(3), a court is required to order service

15    of process for an indigent plaintiff by the United States Marshal or deputy Marshal.

16    The Court hereby ORDERS the United States Marshal or deputy marshal from the

17    Western District of Washington to effectuate service of process on the Defendants.  However, for

18    this to be accomplished, Plaintiff will need to identify for the Marshal(s) the precise address of

19    each Defendant where service can be accomplished.  For the agency Defendant, Plaintiff will

20    need to identify the designated representative, including the precise address, where service can

21    be accomplished.  Plaintiff shall immediately file this information so the Clerk can provide it to

22

23    [5] The Court understands these instructions previously were transmitted to Plaintiff in relation to
his litigation filed under 3:25-cv-05490-TMC.  Nonetheless, the Clerk is directed to again send
this these instructions to Plaintiff.

24

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
ACCOMMODATIONS (DKT. NO. 9) - 8

1  the Marshal(s). The Marshals SHALL then serve the summons, complaint, and Plaintiff's

2  motion for a temporary restraining order on the Defendants. The Marshals will not attempt to

3  effectuate service until Plaintiff provides the necessary information.

4              C.  Flexibility regarding scheduling of in-court or telephonic appearances

5        Plaintiff also requests "scheduling modifications" to include "flexibility in scheduling in-

6  court or telephonic appearances." (*Id.*) At present time there are no scheduled hearings and it is

7  unclear when the Court may schedule a hearing, if at all. If a hearing is scheduled, Plaintiff can

8  renew his request for scheduling modifications at that time.

9  **IV.    CONCLUSION**

10       Based on the above, the Court GRANTS in part and DENIES in part Plaintiff's motion

11  for accommodations (Dkt. No. 7-1) as follows:

12      1.  Plaintiff's motion to appoint counsel and in the alternative to appoint a guardian ad

13          litem is DENIED.

14      2.  Plaintiff's request to allow for electronic filing of documents and receiving

15          documents through means other than the CM/ECF Filing System is DENIED.

16          However, the Clerk is directed to email Plaintiff a PDF copy of the instructions for

17          registering an account and for using the CM/ECF Filing System. If Plaintiff does not

18          register to use the CM/ECF Filing System, Plaintiff shall file all documents via

19          regular mail. The Clerk will not file documents on Plaintiff's behalf as Plaintiff has

20          demonstrated the ability to review instructions and to use computer applications and

21          systems.

22      3.  Plaintiff's request to have the United States Marshal or a deputy marshal effectuate

23          service of process pursuant to Federal Rule of Civil Procedure 4(c)(3) is GRANTED.

24

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
ACCOMMODATIONS (DKT. NO. 9) - 9

However, Plaintiff SHALL immediately file on the Court docket information identifying the precise address of each defendant where service can be accomplished. For the agency defendant, Plaintiff SHALL identify the designated representative, including the precise address, where service can be accomplished. Once filed, the Clerk shall provide that information, along with copies of the summons, complaint, and Plaintiff's temporary restraining order to the Marshal(s) for service on each defendant. The Marshal(s) SHALL file proof of service with the Clerk's office once completed.

4. Plaintiff's request for scheduling modifications is DENIED as premature because there currently are no scheduled hearings. Plaintiff may raise this issue again if and when a hearing is scheduled.

5. Any additional accommodation requests related to this litigation SHALL be filed on the Court's docket as a formal motion for the Court to consider. The Clerk's office will not respond to any additional accommodation request.

Dated this 26th day of June, 2025.



David G. Estudillo
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ACCOMMODATIONS (DKT. NO. 9) - 10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM NELSON,

                 Plaintiff,

    v.

WASHINGTON BOARD OF
INDUSTRIAL APPEALS et al.,

           Defendants.

CASE NO. 3:25-cv-05551-DGE

ORDER TO SHOW CAUSE

      On July 22, 2025, the Court denied several of Plaintiff's outstanding motions and informed Plaintiff that the Court would not review filings from Plaintiff in this litigation until Defendants were served with process, which could only occur once Plaintiff provided the necessary information for the Marshals to effectuate service. (Dkt. No. 38.) On August 12, 2025, the Court reiterated that Plaintiff had still not provided the information necessary for the Marshals to effectuate service. (Dkt. No. 40.)

      As of the date of this order, absent from the docket is any evidence confirming Plaintiff provided the Marshals with the necessary information to effectuate service as previously ordered.

ORDER TO SHOW CAUSE - 1

Case 3:25-cv-05055-DGE Document 41 Filed 11/13/25 Page 2 of 2

1    Accordingly, Plaintiff shall show cause, no later than **November 26, 2025**, why this case should

2    not be dismissed for want of prosecution.

4        Dated this 13th day of November, 2025.

David G. Estudillo
United States District Judge

ORDER TO SHOW CAUSE - 2