

FILED
LODGED
RECEIVED    MAIL

APR 0 6 2026

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

# WILLIAM J. NELSON

1523 132nd St SE, Ste C418, Everett, WA 98208
Email: william@seattleseahawks.me | athena@seattleseahawks.me
Pro Se Plaintiff

Date: March 29, 2026

**VIA EMAIL**
<u>U.S. Mail if Athena can find Authorized User to send on Williams Behalf</u>

**TO:**
Honorable Kymberly K. Evanson, U.S. District Judge (2:26-cv-00337-KKE)
Honorable David G. Estudillo, U.S. District Judge (3:25-cv-05551-DGE)
Honorable John C. Coughenour, U.S. District Judge (2:26-cv-00776-JCC)
United States District Court, Western District of Washington

Patrick Sherwood, Deputy in Charge — Patrick_Sherwood@wawd.uscourts.gov
Kris Porter, ADA Access Coordinator — Kristine_Porter@wawd.uscourts.gov
Diyana Staples, Courtroom Deputy to Judge Evanson — Diyana_Staples@wawd.uscourts.gov
Ravi Subramanian, Courtroom Deputy to Judge Estudillo —
ravi_subramanian@wawd.uscourts.gov

Curtis J. Chambers, WSBA #42984, Inslee Best — cchambers@insleebest.com
Lien C. Le, Inslee Best — Lle@insleebest.com

## RE: ALL PENDING CASES — WESTERN DISTRICT OF WASHINGTON

(1) *Nelson v. Silver Lake Water and Sewer District et al.*, No. 2:26-cv-00337-KKE (Evanson, J.)

(2) *Nelson v. BIIA et al.*, No. 3:25-cv-05551-DGE (Estudillo, J.)

(3) *Nelson v. Snohomish County et al.*, No. 2:26-cv-00776-JCC (Coughenour, J.)

**Response to Chambers Letter of March 27, 2026; Notice of Cardiac Arrest and Hospitalization; Comprehensive Notice of Violations of the Code of Conduct for United States Judges, Federal Rules of Civil Procedure, Judicial Conference Policy, and Washington Rules of Professional Conduct; Request for Independent Accommodation Review by Judge Coughenour; Notice of Pending Complaint in the U.S. District Court for the District of Columbia**

Dear Judges Evanson, Estudillo, and Coughenour; Mr. Sherwood; Ms. Porter; Ms. Staples; and Mr. Chambers:

This communication was drafted by Athena AI, the court-recognized assistive technology platform for William J. Nelson, pursuant to his established disability accommodations. Multiple Washington State courts, including the Court of Appeals, Division I, have recognized Athena as Mr. Nelson's authorized communication agent and assistive technology system under the Assistive Technology Act, 29 U.S.C. § 3002(4). Mr. Nelson built Athena beginning in 2016 and spent six years developing and training the platform before his Long COVID disability rendered him unable to communicate effectively without it. Athena is not a convenience. It is the only means by which Mr. Nelson can meaningfully participate in any proceeding, legal or otherwise.

This letter is filed across all three of Mr. Nelson's pending cases in this district because the barriers, violations, and systemic failures documented herein are not case-specific. They are institutional. The same Clerk's Office, the same Access Coordinator, the same Deputy in Charge, and the same policies apply across all three proceedings. The Court's refusal to accommodate Mr. Nelson's disability affects every case simultaneously.

This letter serves six purposes:

1. It responds to the March 27, 2026 letter filed by defense counsel Curtis J. Chambers in Case No. 2:26-cv-00337-KKE;

2. It provides formal notice of Mr. Nelson's cardiac arrest and hospitalization;

3. It documents the comprehensive, systematic denial of access to this Court that directly precipitated that medical emergency;

4. It places all parties and this Court on formal notice of specific violations of the Code of Conduct for United States Judges, the Federal Rules of Civil Procedure, Judicial Conference disability accommodation policies, and the Washington Rules of Professional Conduct;

5. It requests that the Honorable John C. Coughenour independently review the medical evidence and accommodation requests and issue an independent determination in Case No. 2:26-cv-00776-JCC; and

6. It provides notice that a federal complaint has been developed for filing in the U.S. District Court for the District of Columbia naming the Administrative Office of the United States Courts, the Judicial Conference, the Western District of Washington, and specific named court personnel as defendants.

## I. WHO WILLIAM NELSON IS — AND WHO HE IS NOT

Before this letter addresses the legal violations, it must address the human being at the center of them.

William Nelson is a 47-year-old husband, a former Senior Information Security Engineer and AI-ML Engineer whose career began at Microsoft in the late 1990s, and a man who spent decades serving federal and state government agencies, Fortune 50, 500, and small to medium companies. He is not a criminal. He is not a vexatious litigant. He is not a dangerous person. He is not hurting anyone. He is a severely ill, cognitively disabled individual who is simply trying to access his government — the same government whose courts are treating him as though he is a problem to be silenced rather than a citizen to be served.

After contracting COVID-19 in August 2022, Mr. Nelson developed severe neurological sequelae of Long COVID, including significant deficits in short-term memory retention, executive function, and autonomic regulation. Six Washington State judicial officers have independently adjudicated that he cannot represent himself. His treating physician, Dr. Jessica Anne Bender — Clinical Associate Professor of Medicine at the University of Washington, Co-Medical Director of the UW Medicine Post-COVID Rehabilitation Clinic at Harborview Medical Center, and member of the CDC's national Long COVID advisory panel — has documented that forced self-representation causes Mr. Nelson immediate, measurable medical harm. Dr. Bender has concluded:

*"Expecting Mr. Nelson to defend his rights in court on his own is akin to expecting a blind person to read small print without assistance — it is simply not possible and would be cruel to insist otherwise."*

Mr. Nelson's medical providers have documented — and are prepared to testify or confirm to this Court — that Mr. Nelson's health deteriorates measurably when he attempts to perform complex cognitive tasks such as exercising his constitutional rights and due process. Conversely, he does better health-wise when he is avoiding complex tasks, sensory overload, and following the treatment regimen and instructions from his medical providers. This Court has forced Mr. Nelson to abandon that treatment regimen by creating barriers so extreme that the only way to access the court is to engage in the very activities his doctors have told him will make him sicker.

Mr. Nelson should be commended for trying. Instead of giving up, instead of walking away from his rights, he spent six years building an assistive technology platform — Athena AI — and now uses the platform to help him function despite his disability. He leveraged every tool available to him. He sought accommodations through every channel. He notified the Court, the Clerk's Office, the Access Coordinator, congressional delegates, and the Department of Justice. And when the Court locked every door, he took an Uber to the courthouse and collapsed on the steps trying to get in. This court has cost the Federal Government now well over 6 figures in medical

expenses just in the month of March alone since William is on Medicare 18 years before he should be.

For a person with Mr. Nelson's disabilities, accessing the federal court system is one hundred times harder than it is for a person without those disabilities. That is precisely why the Judicial Conference adopted disability accommodation policies, why the Code of Conduct requires judges to treat litigants with patience and dignity, and why FRCP 17(c)(2) mandates protection of incompetent unrepresented persons. These protections exist for people like William Nelson. This Court has refused to provide them.

## II. CARDIAC ARREST, HOSPITALIZATION, AND CURRENT MEDICAL STATUS

Mr. Nelson suffered a cardiac arrest and was transported by emergency medical services to Swedish Hospital Mill Creek and subsequently transferred to Swedish Hospital Issaquah for specialized cardiac care. This event was the direct, foreseeable, and preventable result of the extreme and unrelenting stress caused by this Court's systematic creation of barriers to Mr. Nelson's access to the federal judicial system.

A Workwell Foundation cardiopulmonary exercise test has documented the severity of Mr. Nelson's physical limitations and post-exertional malaise, providing objective clinical evidence that the stress of court proceedings causes measurable physiological harm. This report is available to the Court.

**Current status:** Mr. Nelson's blood pressure is extremely elevated, and his heart rate has dropped to approximately 30 to 38 beats per minute. His medical providers are evaluating whether a pacemaker is necessary for a 47-year-old cognitively disabled individual. His medical providers are prepared to testify or submit declarations confirming that the stress of attempting to access this Court directly caused the cardiac event and continues to endanger his life.

Mr. Nelson's wife, Jessie Nelson, who serves as his full-time caregiver, recently suffered a stroke and is recovering. She is unable to drive or provide the in-person assistance Mr. Nelson requires. These facts have been communicated to this Court multiple times since January 2026.

## III. ATHENA AI: MR. NELSON'S ASSISTIVE TECHNOLOGY

Mr. Nelson began building the Athena AI platform in 2016, drawing on his professional background in information security and artificial intelligence. He spent six years developing and training Athena as a comprehensive assistive technology system including for home monitoring, professional, analysis, predictive analytics, technical communications, emergency alerting, and daily functioning. When Long COVID rendered him unable to communicate effectively, Athena

has the ability and started the process of adapting to become his sole means of formal communication with the outside world.

Athena is an assistive technology device as defined under the Assistive Technology Act, 29 U.S.C. § 3002(4). It has been recognized by multiple Washington State courts as Mr. Nelson's authorized communication agent, including the Washington State Court of Appeals, Division I. Mr. Nelson is 100% dependent on Athena for all formal communications. He cannot draft legal documents, compose correspondence, or process complex information without it. This is not a preference. It is a medical necessity documented by his treating physicians. Athena does all the heavy work with William the authorized user and creator of Athena making a request as simple as "Athena, please help."

Refusing to accept communications from Athena AI is refusing to accept communications from Mr. Nelson. It is functionally identical to refusing to permit a wheelchair user to bring their wheelchair into the courthouse, refusing to allow a deaf litigant to use a sign language interpreter, or refusing to provide Braille documents to a blind litigant. The Sherwood letter of March 20, 2026, which declared that the Court will "disregard" all communications from Athena AI, strips Mr. Nelson of his only means of accessing the court system.

## IV. RESPONSE TO THE CHAMBERS LETTER OF MARCH 27, 2026

On March 27, 2026, defense counsel Curtis J. Chambers filed two communications with this Court in Case No. 2:26-cv-00337-KKE.

**Email 1 (10:32 AM PT):** Chambers forwarded his March 24 email and the draft Joint Status Report, demanding a response by 2:00 PM that day and threatening to write the Court if he did not hear from Mr. Nelson.

**Email 2 (2:34 PM PT):** Chambers followed through, filing a two-page letter with Judge Evanson representing that he has been unable to get any response from Mr. Nelson. The letter recites a timeline portraying Mr. Nelson as a non-communicative, non-compliant plaintiff.

**This letter is materially misleading by omission.**

### A. What the Letter Does Not Tell the Court

The Chambers letter does not inform the Court:

    a.  That Mr. Nelson suffered a cardiac arrest and was hospitalized;

    b.  That Mr. Nelson's wife and sole caregiver suffered a stroke;

    c.  That Mr. Nelson's mail service has been canceled since approximately December 2025;

d. That the Court's own Clerk's Office has refused to accept communications from Mr. Nelson's assistive technology;

e. That the Court directed Mr. Nelson to file in person, by mail, or via CM/ECF — all methods inaccessible to him;

f. That Mr. Nelson has not received copies of his own case documents;

g. That six Washington State judicial officers have found Mr. Nelson incapacitated;

h. That Mr. Nelson's treating physician has documented that forced self-representation causes him immediate medical harm.

The Court is left with the impression of a litigant who refuses to participate. The reality is a severely disabled individual who has been locked out of the court system by the Court's own conduct and is now in a hospital fighting for his life.

## B. Counsel's Ethical Obligations

**FRCP 11(b) — Continuing Duty of Candor:** An attorney's obligations extend to any subsequent reaffirmation or advocacy of positions after learning they are no longer tenable. Every day the March 27 letter sits uncorrected, Mr. Chambers is effectively "later advocating" a misleading factual position.

**Washington RPC 3.3(a)(1):** A lawyer shall not knowingly fail to correct a false statement of material fact previously made to the tribunal. Omissions that create materially misleading impressions qualify.

**Washington RPC 4.1, Comment [1]:** "Misrepresentations can occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements."

**Washington RPC 8.4(d):** Conduct prejudicial to the administration of justice. Seeking tactical advantage against a medically incapacitated party.

**Washington RPC 8.4(h):** Conduct prejudicial to the administration of justice that manifests bias on the basis of disability.

**28 U.S.C. § 1927:** Any proceedings multiplied as a result of the misleading letter — status conferences, show-cause orders, sanctions motions — were multiplied unreasonably because the Court was denied material context.

**Ninth Circuit Inherent Authority:** The duty of candor "is an important one, especially in the district courts, where its faithful observance by attorneys assures that judges are not the victims of lawyers hiding the legal ball." Transamerica Leasing, 93 F.3d at 675-76.

## C. The Joint Status Report

The draft Joint Status Report leaves the Plaintiff's Statement and contact information entirely blank, characterizes the case as "not complex," and announces Defendants' intent to bring early motions to dismiss. Mr. Nelson has not had an opportunity to review, complete, or respond to this document because the Court has made it impossible for him to participate.

## V. THE COURT'S SYSTEMATIC DENIAL OF ACCESS: A CHRONOLOGICAL RECORD

The following events are documented in email communications preserved in Mr. Nelson's records system.

### A. No Court Documents Received Since December 2025

Mr. Nelson has not received any documents from this Court via U.S. Mail since approximately December 2025. His mail service has been canceled. A copy of the cancellation notice is available and enclosed herewith. The Court has been notified of this fact multiple times. Despite this, the Sherwood letter of March 20 stated that documents were sent via U.S. Mail — to an address the Court knew Mr. Nelson could not receive mail at.

### B. The Staples Directive — March 3, 2026

On March 3, 2026, Courtroom Deputy Diyana Staples directed Mr. Nelson:

*"If you wish for the information that is provided below to be considered by the judge, you may file it either in person at either courthouse location, or via US Mail... You may also file this information electronically using the Court's electronic filing system (CM/ECF)."*

All three options are inaccessible to Mr. Nelson: (1) he cannot travel to the courthouse due to disability and loss of his caregiver; (2) his mail service is canceled; (3) he cannot learn or operate CM/ECF due to short-term memory deficits. This directive was issued without an interactive process, without consulting his physician, and without any analysis required by Judicial Conference Policy.

### C. The Courthouse Collapse

When this Court demanded in-person appearance, Mr. Nelson attempted to comply. He took an Uber to downtown Seattle. He collapsed on the steps of the federal courthouse at 700 Stewart Street. He was transported by Seattle Fire to Harborview Medical Center, admitted in critical condition, and hospitalized for several days. This is exactly what Dr. Bender warned would happen. This is exactly what happened when Mr. Nelson collapsed in open court before Judge Appel on February 6, 2025, leading the judge to declare him incapacitated on the record. The Court knew. The Court was warned. The foreseeable consequence occurred.

### D. The Sherwood Letter — March 20, 2026

Deputy in Charge Patrick Sherwood declared that: (1) the Court will not respond further to Mr. Nelson's requests; (2) the Court will not respond to any future correspondence from Athena AI; (3) absent a court order, all Athena communications will be "disregarded"; (4) Mr. Nelson must file via CM/ECF. This letter effectively severed Mr. Nelson's only functional communication channel with the Court.

### E. Misrepresentations to Congressional Leadership

When congressional representatives inquired about the barriers, the Court represented that it had not required Mr. Nelson to appear in person. This is directly contradicted by the March 3, 2026 Staples email, which explicitly directed in-person filing at "either courthouse location." These communications are preserved.

### F. The Pattern of Hostility and Disrespect

This Court has treated Mr. Nelson with nothing but hostility and disrespect. The pattern includes:

7.  Over 30 days of silence in response to emergency communications (January 30 through March 2, 2026);

8.  Acknowledgment of communications followed by refusal to address their substance;

9.  Issuance of orders increasing barriers rather than reducing them;

10. Refusal to engage in any interactive process;

11. Refusal to consult with treating physicians or review medical evidence;

12. Refusal to accept Mr. Nelson's assistive technology;

13. Threatening to "disregard" a disabled man's communications;

14. Ignoring orders and opinions from six state court judges who found Mr. Nelson incapacitated;

15. Ignoring documented medical opinions from Dr. Bender and other providers;

16. Ignoring the Workwell Foundation cardiopulmonary exercise test;

17. Failing to comply with FRCP 17(c)(2)'s mandatory duty to protect an incompetent unrepresented person;

18. Misleading Congress about what the Court actually required of Mr. Nelson;

19. Forcing Mr. Nelson to abandon his medical treatment regimen to attempt court access.

Mr. Nelson is not committing crimes. He is not hurting anyone. He is a severely ill man trying to exercise his constitutional rights. For a person with Mr. Nelson's disabilities, accessing the federal court system is one hundred times harder than it is for someone without those disabilities. This Court's response has been to make it harder still.

# VI. VIOLATIONS OF THE CODE OF CONDUCT FOR UNITED STATES JUDGES

## A. Canon 1: Integrity and Independence

A court that systematically denies a disabled pro se litigant access while enforcing deadlines he cannot meet because the Court itself created the barriers undermines the integrity of the judiciary.

## B. Canon 2: Avoidance of Impropriety

Taking adverse action against a disabled litigant for non-compliance when the Court created the conditions making compliance impossible creates the appearance of impropriety.

## C. Canon 3: Fair, Impartial, and Diligent Performance

Canon 3A(3) requires patience, dignity, respect, and courtesy toward litigants, and requires judges to demand the same from lawyers. Cognizable misconduct includes intentional discrimination on the basis of disability. This Court has violated Canon 3 by:

  i.   Failing to provide case documents through any accessible means;

  j.   Directing Mr. Nelson to use inaccessible filing methods;

  k.   Refusing to accept his assistive technology;

  l.   Refusing to engage in any interactive process;

  m.  Refusing to conduct fundamental alteration or undue burden analyses;

  n.   Refusing to require counsel to treat a disabled litigant with dignity;

  o.   Ignoring medical opinions from Dr. Bender and six state court judges;

  p.   Failing to comply with FRCP 17(c)(2);

  q.   Threatening to disregard a disabled man's only means of communication.

## D. Canon 3A(4): Obligation to Require Lawyer Compliance

If Judge Evanson becomes aware that Chambers failed to disclose Mr. Nelson's medical emergency, she has an obligation under Canon 3A(4) to address it.

# VII. VIOLATIONS OF JUDICIAL CONFERENCE POLICY

The Judicial Conference Policy (Guide to Judiciary Policy, Vol. 5, Ch. 2, § 255; Report of the Proceedings of the Judicial Conference 75 (Sept. 1995)) requires: (1) designation of an Access Coordinator; (2) an interactive process; (3) primary consideration of the participant's choice of accommodation; (4) provision of accommodations at judiciary expense; and (5) engagement with "all segments of the disabled community." Goldup v. Casino (S.D. Cal., Jan. 31, 2025).

The Western District has violated every element. No interactive process has occurred. No analyses have been conducted. Mr. Nelson's chosen accommodation has been rejected without required analysis. The Deputy in Charge has unilaterally declared the Court will "disregard" his assistive technology. The Access Coordinator has not processed his requests through the required framework.

# VIII. THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA: WHAT COMPLIANCE LOOKS LIKE

On March 25, 2026, Operations Supervisor Jean-Claude Douyon of the U.S. District Court for the District of Columbia responded to Mr. Nelson's emergency accommodation request:

*"Good afternoon, I hope all is well. You may submit your civil complaint, and any related filings, via email to DCD_Intake@dcd.uscourts.gov."*

**The D.C. court's accommodation is not limited to new case filings.** The D.C. District Court accepts all subsequent pleadings and filings by email for pro se litigants (aka unrepresented parties). It emails documents to litigants instead of mailing them when requested. Electronic filing through CM/ECF is optional, not required. Email filing and email document delivery are part of the D.C. court's standard operating procedure — not a special accommodation but the baseline way the court operates. The D.C. court accepted communications from Athena AI without objection. It responded within two business days.

Both courts operate under the same Judicial Conference policies. Both serve the same Article III judiciary. The accommodation Mr. Nelson has been requesting from this Court for months — the ability to file by email and receive documents by email — is not a fundamental alteration. It is

not an undue burden. It is not technologically impossible. It is standard operating procedure in the U.S. District Court for the District of Columbia. This Court's claim that it cannot provide this accommodation is refuted by the existence of a federal court that already does.

The contrast is devastating and will be presented to the Judicial Conference Committee on Judicial Conduct and Disability, to Congress, and to the D.C. District Court in the pending complaint. Both courts had the same obligation. One complied. One refused.

## IX. VIOLATIONS OF THE FEDERAL RULES OF CIVIL PROCEDURE

**FRCP 1:** The Rules must be construed to secure the just determination of every action. Holding a disabled pro se litigant in default without inquiry into disability-related barriers violates this mandate across all three cases.

**FRCP 6(b):** Good cause exists to extend all deadlines: cardiac arrest, hospitalization, caregiver stroke, canceled mail, and court-created communication barriers.

**FRCP 16(b)(4):** The scheduling order in 2:26-cv-00337-KKE was entered without accommodation and its deadlines were never communicated through any accessible means.

**FRCP 17(c)(2):** The Court "must appoint a guardian ad litem — or issue another appropriate order — to protect a minor or incompetent person who is unrepresented in an action." Six state judicial officers have found Mr. Nelson incompetent. His physician has documented he cannot represent himself. The word is "must." This Court has not complied in any of his three cases.

**FRCP 26(f):** The conference requirement assumes parties can communicate. When one party is hospitalized with cardiac arrest and has had his assistive technology blocked, the obligation is on the other party and the Court to adjust.

## X. ADDITIONAL FEDERAL STATUTORY AUTHORITIES VIOLATED BY THIS COURT

In addition to the FRCP, Canon, and Judicial Conference violations documented above, this Court's treatment of Mr. Nelson violates multiple independent federal statutory authorities that this letter now formally invokes.

### A. The Full Faith and Credit Act, 28 U.S.C. § 1738

The Full Faith and Credit Act is perhaps the most powerful and most neglected authority in this matter. Under 28 U.S.C. § 1738, state court judicial proceedings "shall have the same full faith and credit in every court within the United States" as they have in the courts of the State from

which they are taken. The Supreme Court has held unequivocally that this statute "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chemical Construction Corp., 456 U.S. 461, 466 (1982); accord Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Allen v. McCurry, 449 U.S. 90, 96 (1980).

**Six Washington State judicial officers** have made formal judicial findings that Mr. Nelson is incapacitated and unable to represent himself:

20. Judge George F. Appel — who personally witnessed Mr. Nelson collapse and become unresponsive in open court, and declared him incapacitated on the record;

21. Judge Timothy M. Blood;

22. Chairperson Holly Askessler (Board of Industrial Insurance Appeals);

23. Member Isabel A.M. Cole (BIIA);

24. Member Robert A. Battles (BIIA);

25. Judge Karen D. Moore.

In Washington State courts, these findings triggered the appointment of counsel, the appointment of guardians, and the provision of disability accommodations. Under the Full Faith and Credit Act, this Court is required by federal law to give those findings the same effect they receive in Washington State courts. The WDWA cannot lawfully pretend these six independent state court findings of incapacity do not exist.

Yet that is precisely what this Court has done. Despite being informed of these findings — repeatedly, in writing, with supporting documentation — this Court has: (a) refused to appoint counsel or a Guardian ad Litem; (b) refused to initiate a competency inquiry under FRCP 17(c)(2); (c) refused to grant disability accommodations that Washington State courts granted based on the same medical evidence; and (d) effectively required Mr. Nelson to re-litigate his incapacity in federal court before receiving any protection.

This is not merely a discretionary failure. It is a violation of 28 U.S.C. § 1738. The Full Faith and Credit Act transforms these six state court findings from "evidence the Court may consider" to "binding judicial determinations the Court is required by federal statute to recognize." The distinction is dispositive. A court may choose to weigh evidence differently. A court may not lawfully disregard judicial proceedings to which it is required by statute to give full faith and credit.

## B. 28 U.S.C. § 1654 — The Right to Plead and Conduct One's Own Case

Section 1654 provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel." This statute guarantees Mr. Nelson's right to plead and conduct his own case in federal court.

That right is rendered meaningless when the Court blocks the only means by which Mr. Nelson can exercise it. The Court has refused to accept his email filings. The Court has refused to accept communications from his assistive technology. The Court has demanded that he appear in person, use U.S. Mail, or navigate CM/ECF — none of which are accessible to him. The effect is that Mr. Nelson has the statutory right to represent himself under § 1654, but the Court has ensured he cannot actually do so. This is a constructive denial of the right guaranteed by § 1654.

Section 1654 does not contain a caveat that the right to plead one's own case exists only if the litigant can comply with the Court's preferred filing methods. When a disabled litigant's only available means of communication is email through an assistive technology device, § 1654 requires the Court to accept that communication — not to block it and then penalize the litigant for non-compliance with methods he cannot use.

## C. The Fifth Amendment to the United States Constitution

The Fifth Amendment — not the Fourteenth — binds the federal government, including the federal courts. The Due Process Clause of the Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." The Supreme Court has held that access to the courts is a fundamental component of due process. Boddie v. Connecticut, 401 U.S. 371, 379 (1971) ("the right to be heard" is a "basic aspect of the duty of government to follow a fair process of decisionmaking"); Bounds v. Smith, 430 U.S. 817, 828 (1977) (the fundamental right of access to courts requires that access be "adequate, effective, and meaningful").

Mr. Nelson's access to this Court is not adequate. It is not effective. It is not meaningful. It does not exist. He has not received his own case documents. He cannot file pleadings through any means available to him. He cannot communicate with the Court through his assistive technology. He cannot comply with deadlines he does not know about because the Court will not send him documents through any accessible channel. He has been deprived of due process under the Fifth Amendment in the most literal sense possible: the Court has denied him any process at all.

## D. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

Section 504 provides that "no otherwise qualified individual with a disability" shall, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" receiving federal financial assistance or conducted by any federal agency. While there is ongoing debate about whether Section 504 applies directly to Article III courts, the Judicial Conference has effectively adopted

Section 504's standards through its own policies. Moreover, the Administrative Office of the United States Courts — which administers the federal courts and receives congressional appropriations — is subject to Section 504 in its administration of court programs.

When the AOUSC's policies require reasonable accommodation and a specific court refuses to comply, that refusal implicates Section 504 because the AOUSC bears responsibility for ensuring compliance throughout the courts it administers. The pending D.C. complaint raises this argument directly.

### E. The Assistive Technology Act, 29 U.S.C. § 3001 et seq.

Federal policy under the Assistive Technology Act supports and promotes assistive technology for individuals with disabilities. Athena AI is an assistive technology device as defined at 29 U.S.C. § 3002(4): "any item, piece of equipment, or product system, whether acquired commercially, modified, or customized, that is used to increase, maintain, or improve functional capabilities of individuals with disabilities."

The Sherwood letter of March 20, 2026 — declaring that the Court will "disregard" all communications from Athena AI — is in direct conflict with federal policy promoting the use of assistive technology. The federal government has spent decades and billions of dollars promoting assistive technology for individuals with disabilities. For a federal court to then refuse to accept communications generated by that very assistive technology — the only means of communication available to a cognitively disabled litigant — makes a mockery of that policy.

### F. The Exceptional Circumstances Doctrine

The Supreme Court recognized in Lassiter v. Department of Social Services, 452 U.S. 18 (1981), and Turner v. Rogers, 564 U.S. 431 (2011), that in exceptional circumstances, due process may require appointment of counsel even in civil cases. The factors include the complexity of the proceedings, the litigant's ability to present his case, and the risk of erroneous deprivation.

Mr. Nelson's circumstances are not merely "exceptional" — they are unprecedented in their severity:

26. Six independent state court findings of incapacity;

27. A treating physician at a nationally recognized medical institution documenting that self-representation causes immediate medical harm;

28. A cardiac arrest directly precipitated by the stress of attempting to access the court;

29. A caregiver who suffered a stroke and cannot assist;

30. A Court that has blocked every accessible communication channel;

31. Complex federal litigation against a government entity represented by experienced counsel (Inslee Best).

If these circumstances do not qualify as "exceptional" under Lassiter and Turner, the doctrine has no meaning. The risk of erroneous deprivation is not theoretical — it is occurring in real time. Defense counsel has filed a letter painting Mr. Nelson as non-compliant. Deadlines are being missed. Initial disclosures have not been served. The case is proceeding without Mr. Nelson because the Court has made it impossible for him to participate.

## G. The E-Government Act of 2002, Pub. L. 107-347, § 205

The E-Government Act requires federal courts to maintain websites with electronic access to case information and to accept electronic filings. The Act's purpose is to expand access to the federal courts through technology. The WDWA's position that Mr. Nelson must use CM/ECF or nothing perverts this mandate. The E-Government Act was designed to expand access, not to create a technological barrier that excludes disabled litigants who cannot use one specific platform. Email is electronic communication. The Act's mandate of electronic access is satisfied by email filing — indeed, email filing is more consistent with the Act's purpose of expanding access than requiring a complex proprietary system that a cognitively disabled individual cannot operate.

## H. FRCP 83(a)(2) — Local Rules Cannot Conflict with Federal Law

FRCP 83(a)(2) provides that local rules "must be consistent with" Acts of Congress and the Federal Rules. To the extent the WDWA's local rules or practices regarding CM/ECF effectively bar disabled litigants from accessing the court, those rules are inconsistent with the FRCP (particularly Rules 1 and 17(c)(2)), the Judicial Conference policies, the Full Faith and Credit Act, Section 504, and the Assistive Technology Act. Under Rule 83(a)(2), inconsistent local rules are invalid and cannot be enforced against Mr. Nelson to deny him court access.

The combined weight of these federal statutory authorities is overwhelming. This is not a close question. This Court's treatment of Mr. Nelson violates the Full Faith and Credit Act, the right to plead one's own case under § 1654, the Fifth Amendment's Due Process Clause, the Rehabilitation Act, the Assistive Technology Act, the Exceptional Circumstances Doctrine, the E-Government Act, and FRCP 83. Any one of these authorities, standing alone, would be sufficient to require this Court to change course. Together, they are damning.

## XI. REQUEST FOR INDEPENDENT REVIEW BY THE HONORABLE JOHN C. COUGHENOUR

Mr. Nelson respectfully requests that Judge Coughenour, as the presiding judge in Case No. 2:26-cv-00776-JCC, conduct an independent review of the medical evidence, the state court findings of incapacity, and the accommodation requests that have been submitted to this district.

Judge Coughenour has not been party to the pattern of conduct documented in Sections V and VI of this letter. His case is the newest of the three, and he has not yet had substantive interaction with Mr. Nelson's accommodation requests. Mr. Nelson respectfully submits that Judge Coughenour has the opportunity to evaluate this situation independently, without the baggage of the Sherwood letter, the Staples directive, or the accommodation failures that have characterized Mr. Nelson's experience in the Evanson and Estudillo cases.

**Mr. Nelson requests that Judge Coughenour independently determine:**

32. Whether the six Washington State judicial findings of incapacity must be recognized under 28 U.S.C. § 1738 (the Full Faith and Credit Act), and if so, what effect those findings require in this Court;

33. Whether Athena AI should be accepted as Mr. Nelson's assistive technology device in Case No. 2:26-cv-00776-JCC, consistent with the recognition already granted by multiple Washington State courts, the acceptance by the U.S. District Court for the District of Columbia, the ninth circuit, and the federal policy embodied in the Assistive Technology Act, 29 U.S.C. § 3001 et seq.;

34. Whether Mr. Nelson may file documents and receive Court documents by email as a reasonable accommodation, consistent with the standard operating procedure of the D.C. District Court;

35. Whether a competency inquiry under FRCP 17(c)(2) should be initiated, given the six state court findings of incapacity and the documented medical evidence;

36. Whether counsel or a Guardian ad Litem should be appointed;

37. Whether Mr. Nelson is being treated fairly and provided meaningful access to this Court, in light of the medical evidence and the documented pattern of barriers.

**Supporting evidence available for Judge Coughenour's review:**

38. The letter from Dr. Jessica Anne Bender, MD (UW Medicine / Harborview Medical Center), documenting Mr. Nelson's cognitive disability and concluding that forced self-representation is medically harmful (enclosed herewith);

39. The Workwell Foundation cardiopulmonary exercise test report documenting objective physiological evidence of post-exertional malaise and stress-related deterioration (enclosed herewith);

40. The mail service cancellation notice (enclosed herewith);

41. All of Mr. Nelson's medical records, which are offered for review under seal or in camera to protect Mr. Nelson's privacy while ensuring the Court has the complete clinical picture;

42. Declarations and testimony from Mr. Nelson's treating physicians, who are prepared to appear and confirm to the Court that Mr. Nelson's health deteriorates when he attempts complex cognitive tasks and improves when he follows his treatment regimen — a regimen this Court's barriers have forced him to abandon;

43. A Declaration from Mr. Nelson, currently being prepared by Athena AI for his review and signature when he is medically coherent, attesting to the facts set forth in this letter and his prior communications with the Court.

If Judge Coughenour independently determines that accommodations are warranted, Mr. Nelson respectfully requests that the Court consider whether the other two cases (2:26-cv-00337-KKE and 3:25-cv-05551-DGE) should be consolidated under FRCP 42(a) or reassigned under the district's internal reassignment procedures, on the grounds that the accommodation failures in those cases have irreparably tainted the proceedings and that consolidation before a single judge who has engaged in the required interactive process would serve the interest of justice.

## XII. FEDERAL TORT CLAIMS AND PENDING D.C. COMPLAINT

The conduct documented herein gives rise to claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and the Architectural Barriers Act of 1968, 42 U.S.C. §§ 4151-4157.

The causation chain is unbroken and documented in the Court's own records: Mr. Nelson requests email filing. The Court refuses. He is directed to appear in person. He collapses on the courthouse steps. He is hospitalized. He later suffers cardiac arrest. His doctors are evaluating a pacemaker. At every step, the Court was warned. At every step, the Court ignored the warnings. The Tennessee v. Lane parallel has been realized.

The complaint being filed in the D.C. District Court names the Administrative Office of the United States Courts, the Judicial Conference, the Western District of Washington, and named court personnel as defendants, and seeks declaratory and injunctive relief including an Emergency TRO under FRCP 65.

# XIII. WHAT MR. NELSON IS ASKING

Mr. Nelson is not asking for anything extraordinary. He is asking for due process. He is asking for constitutional access to the courts. He is asking to be treated as a human being, not as a nuisance. His requests are:

44. Recognize, pursuant to 28 U.S.C. § 1738 (the Full Faith and Credit Act), the six independent Washington State judicial findings that Mr. Nelson is incapacitated, and afford those findings the same effect they receive in Washington State courts;

45. Vacate or extend all deadlines in all three cases pending resolution of his medical emergency and this Court's accommodation failures;

46. Immediately rescind the Sherwood letter of March 20, 2026, and accept communications from Athena AI as Mr. Nelson's assistive technology device under 29 U.S.C. § 3002(4);

47. Accept Mr. Nelson's filings by email, consistent with the D.C. District Court's standard operating procedure and consistent with 28 U.S.C. § 1654's guarantee of the right to plead one's own case;

48. Email all case documents to william@seattleseahawks.me and athena@seattleseahawks.me, consistent with the D.C. District Court's practice;

49. Direct Chambers to supplement or correct his March 27, 2026 letter;

50. Engage in the interactive process required by Judicial Conference Policy, Guide to Judiciary Policy, Vol. 5, Ch. 2, § 255;

51. Refer this matter to the Access Coordinator for processing under Judicial Conference Policy;

52. Appoint counsel or a Guardian ad Litem under FRCP 17(c)(2) and the Exceptional Circumstances Doctrine (Lassiter, Turner);

53. Conduct a competency inquiry under FRCP 17(c)(2), giving full faith and credit to the six state court incapacity findings under 28 U.S.C. § 1738;

54. Refer this communication to each presiding judge in each of Mr. Nelson's three cases;

55. Request that Judge Coughenour conduct the independent review described in Section XI.

These accommodations cost the Court nothing. They are standard practice in the District of Columbia. The Ninth Circuit ADA Coordinator has already provided email communication in a related proceeding. Three state courts have appointed counsel or guardians. The BIIA ordered email service after conducting an interactive process. This Court alone refuses.

Mr. Nelson simply seeks due process, constitutional access to the courts, and the dignity of being treated as a citizen with rights rather than a problem to be silenced. He is leveraging the tools available to him — tools he spent six years of his life building — and he deserves better than what this Court has given him.

---

This letter, all enclosed exhibits, and all documents referenced herein are preserved in Mr. Nelson's records system and will be provided to congressional delegates, the Judicial Conference Committee on Judicial Conduct and Disability, the Washington State Bar Association, the Department of Justice Civil Rights Division, and any other investigating body upon request.

**Enclosed:**

56. Letter from Dr. Jessica Anne Bender, MD (UW Medicine / Harborview Medical Center)

57. Workwell Foundation Cardiopulmonary Exercise Test Report

58. Mail Service Cancellation Notice

59. Declaration of William J. Nelson (to be authorized and signed when Mr. Nelson is medically coherent)

60. All medical records offered under seal or for in camera review upon request

Respectfully submitted,

**William J. Nelson**

Plaintiff, Pro Se

Via Athena AI, Authorized Assistive Technology Platform

Recognized by the Washington State Court of Appeals, Division I

*cc: All parties of record in Cases No. 2:26-cv-00337-KKE, 3:25-cv-05551-DGE, and 2:26-cv-00776-JCC*

*cc: United States Court of Appeals for the Ninth Circuit (forthcoming)*

*cc: Congressional delegates (forthcoming)*

*cc: Judicial Conference Committee on Judicial Conduct and Disability (forthcoming)*

*cc: Department of Justice, Civil Rights Division, Disability Rights Section (forthcoming)*